## SELIGMAN *et als.* v. KALKMAN *et als.*

CHARLES H. T. MEYER sued defendants in an action entitled " *Chas. H. T. Meyer,* on behalf of himself and the creditors of the firm of Philip Kalkman & Co., v. *Philip Kalkman,*" for the settlement of the partnership between himself and Kalkman, and a distribution of the assets for the benefit of creditors. Judg-

ment rendered, dissolving the partnership, and directing an account. Plaintiffs here were creditors, and the Referee who took the account reported in their favor the amount now sued for. An order was made confirming the report, and directing a distribution of the assets upon the basis therein established. Plaintiffs now bring an action of debt on judgment, alleging that these proceedings amount to a judgment in their favor against defendants: *Held*, that the proceedings do not amount to a personal judgment, which is necessary to maintain the action; that a personal judgment would have been foreign to the purposes of the suit; and that the relief granted was confined to those purposes; that while no particular words are requisite to constitute a judgment, enough should appear to indicate the intention of the Court to grant the relief which the judgment is relied upon as securing.

APPEAL from the Twelfth District.

The action is debt on a judgment alleged to have been rendered by the Superior Court of the city of San Francisco, on the sixth day of May, 1856, for $4,632.24, in favor of the appellants, and against the appellees, in a suit entitled " *Chas. T. Meyer*, on behalf of himself and the creditors of the firm of Philip Kalkman & Co. v. *Philip Kalkman.*"

The trial in the suit now in hearing was on the issue raised by the first answer, denying " that on the sixth day of May, 1856, or at any other time whatever, a judgment was recovered against them, the defendants, by the above-named plaintiffs, in the Superior Court of the city of San Francisco, for the sum of $4,632.24, or for any other sum whatever."

To maintain the issue on their part, the plaintiffs gave in evidence the judgment roll in *Chas. T. Meyer*, on behalf of himself, etc., v. *Philip Kalkman*, containing the complaint in that action, the decree, Referee's report, and the order of Court ratifying and confirming the same.

The complaint in *Chas. T. Meyer*, on behalf, etc., v. *Philip Kalkman*, was filed "on behalf of Chas. T. Meyer, and also on behalf of all such creditors of the firm of Philip Kalkman & Co. who may desire to be made parties in this action," and alleged—

1. That Meyer and Kalkman became partners on or about the eleventh day of October, 1851; that the partnership was during the pleasure of the parties, and had continued to date, and was then on foot.

11

2. That the defendant had, in sundry particulars, violated the partnership agreement, and the law applicable to the partnership relation.

3. That the firm was legally indebted to a great number of persons, and that the assets were entirely insufficient to pay the indebtedness.

4. The complaint prayed a dissolution of the firm; that an account might be taken as between the partners; that the assets might be applied to the payment of the partnership debts; that a Receiver might be appointed, with authority to collect, etc., and to distribute the avails of the property ratably among the creditors; and for other relief.

Defendant made default.    A Receiver was appointed April 14th, 1856.

The decree was entered May 6th, 1856, whereby the firm was dissolved, and F. J. Lippitt appointed Referee, " to take and state an account between the plaintiff and defendant, touching the affairs of said copartnership; and that such Referee shall have power to examine the parties to this action, and such other persons as he may see fit; and that said Referee take an account of the property and assets of said copartnership, together with its debts and liabilities, and report therein, with all convenient speed, to this Court."

The Referee was directed by the decree to give notice to creditors to appear and prove their claims, and to report the amount and nature of the debts and liabilities of the copartnership within a time limited.

And it was further decreed, that any and all of the creditors might come in under the decree, and prove their debts before the Referee, without any application being made to the Court for that purpose.

And it was further adjudged, that all the debts and liabilities of the firm should be paid before the partners should be entitled to receive anything.

In the Referee's report occurs the following passage:

" The decree directs me to report the debts and liabilities of the copartnership, without making any limitation or exception."

Seligman *v.* Kalkman.

Thereafter, and on the same page, it is stated that " the following schedule shows the amounts of the debts and liabilities, including the respective claims as allowed, and on which *pro rata* distribution should be made."

The schedule referred to is headed as follows:

" Statement of the debts and liabilities of the late firm of Philip Kalkman & Co., of San Francisco."

The twenty-first entry in the schedule is as follows:

| | Amount Claimed. | Principal. | Interest 6 May, 1856. | Amount Allowed. | Remarks. |
|---|---|---|---|---|---|
| J. Seligman & Co., of San Francisco. | $11,108 53 | $11,108 53 | Waived, | $11,108 53 | $6,476 29 of this claim allowed only conditionally. See conclusions of law, I. |

The last two entries in the " schedule of debts and liabilities " are explained in the report thus:

1. Seligman & Co. presented a claim against Kalkman & Co., for goods sold, of $11,108.53.

2. Of those goods Seligman & Co. had replevied a part, the value of which, at the sale price, was $6,476.29, and the sale price of the goods not replevied was $4,632.24.

3. The latter sum was a debt absolutely due to the claimants, and as such, was allowed by the Referee.

4. The $6,476.29 was allowed only on condition that the claimants should first release to the Receiver all claim to the property replevied; and there was no proof that such release had ever been given.

The order confirming the report was made February 9th, 1857.

The Court below found on the foregoing facts that there was no such judgment in the Superior Court as stated in the complaint, and accordingly gave judgment for defendants.

Plaintiffs appeal.

*Shafters & Heydenfeldt,* for Appellants.

The facts amount in law to a judgment that the firm of Kalkman & Co. were, on the sixth day of May, 1856, absolutely indebted to the plaintiffs in this action, for goods sold and delivered, in the sum of $4,632.24—the amount sued for. The facts show a judgment for all the purposes of pleading and evidence.

" Judgment " is a term of law, and its import is fixed by statute definition.

Practice Act, sec. 144: " A judgment is the final determination of the rights of the parties in the action or proceeding."

One question only can be raised, and that is as follows: Do the facts disclosed by the record offered in evidence ascertain all the conditions contemplated by the statute definition quoted?

This question can be best answered by comparing the facts offered in evidence with the facts called for by the definition.

1st. There must be an " action " or " proceeding."

The case of *Meyer* v. *Kalkman* was an action, beyond dispute.

2d. " Rights " must be involved, and they must be the rights " of parties in the action."

The rights of the respective partners of the firm of P. Kalkman & Co., and of the creditors of that firm as against the firm, were involved in the action of *Meyer* v. *Kalkman*. Meyer and Kalkman were partners, and all the creditors who elected to come in under the decree of May 6th, 1856, also became parties to the action by force of that fact.

The action was brought by Meyer, not on his own behalf merely, but on behalf of the creditors of the firm also. The complaint alleged that there were creditors in fact, and prayed relief for them as well as for Meyer. It is not supposed that Meyer, by adopting this form of declaring, necessarily implicated the creditors as parties, but it gave them an opportunity to become such in their election. When they, under the provisions of the decree, went before the Referee and submitted their claims to him, they became parties to the suit as fully as though they had voluntarily joined with Meyer in the first instance.

3d. The rights of parties to the action must be " determined." In *Meyer* v. *Kalkman*, a Referee was appointed by the decree to " take an account of the debts and liabilities of the firm," and to report therein, giving " the amount and nature of the liabilities."

The Referee had the creditors before him on notice, and the plaintiffs came with others. They submitted their claim. An issue was or might have been taken upon the question of its existence, as a claim, and was in fact taken upon the question of its amount.

Proofs were taken with the customary solemnities, and the Referee found, that is, " determined," that Kalkman & Co. were absolutely indebted to the plaintiffs in the sum of $4,632.24, and in a larger sum should the plaintiffs hereafter elect to do a certain thing, which they have never done.

4th. By the definition in question, the " determination " on the rights of parties to the action must be " final."

What is the meaning of the term " final," as used in the definition in hand ?   We submit, that it means final *in effect,* and not final in view of the familiar classification of judgments into interlocutory and final.   This latter distinction goes entirely upon the relative position of the judgments in the general chain of the proceedings, as that the one comes before the other, or comes between the commencement and close of the action, and the other at the end of it.

This classification of judgments into interlocutory and final does not proceed to any extent upon the effect of those judgments respectively, considered as adjudications upon the matters which they respectively involve.   (3 Blk. Com. 396–7.)

Now, does the word " final," as it is used in the one hundred and forty-fourth section of the Practice Act, mean final with reference to the place, or final with reference to effect ?

The section itself furnishes an answer to this question, for the " final determination " spoken of is to be of " rights."   Thus " rights " are made the subject matter upon which the determination is to act, and if the determination, in effect, concludes the right, then it is a final determination of the right of necessity, and at once takes on the full statute impression of a judgment.

The decree in *Meyer* v. *Kalkman* established, as by judgment, the existence of the firm of P. Kalkman & Co.; that the plaintiff and defendant were members of and constituted the firm; that Kalkman had, in sundry particulars, violated the partnership contract; that there were partnership creditors; and that the firm was in fact insolvent.

The decree was not only final, in effect, to establish the truth of the allegations in the bill, but was so comprehensive in its directions for the future, and in its provisions for the relief of those who were

the parties, or who, as creditors, might thereafter become such, as to supersede the necessity of any further directions or provisions remedial to the rights to be redressed. The decree, therefore, was not only final in effect, but was final also by position. No other decree was ever entered in the action.

Thus the decree, in both the meanings of the word " final," determines that P. Kalkman & Co., on the sixth of May, 1856, were absolutely indebted to Jesse Seligman *et al.* in the sum of $4,632.24. Whether the Seligmans were or were not creditors, and if creditors, then to what extent, were matters " directly in issue " before the Referee. They were not brought into the controversy " incidentally" during the trial, for the controversy, in the proportions which the complaint gave to it, comprehended all the creditors, with their claims. The theory of the action could be fulfilled only by a trial and determination of those claims, and of the precise amount of each. So far as the creditors were concerned, the ultimate relief was full payment or a dividend, but in either event it was absolutely indispensable that it should be judicially ascertained and judicially determined who were creditors, and the exact amount of their several claims. Therefore, those questions were not " incidental." The " allegations " of the creditors before the Referee were " material and traversable," and therefore the determination on those allegations was " final and conclusive." The fact that plaintiffs were absolute creditors to the extent of $4,632.24, is not left to be " inferred by argument from the judgment," but is one of the express determinations of the report and of the decree that adopts it. (I. G. Ev. sec. 528.)

The result is, that the record offered in evidence shows a " determination " that Jesse Seligman *et al.*, " parties to the action " of *Meyer* v. *Kalkman*, were by " right " creditors of P. Kalkman & Co. in the sum of $4,632.24, and discloses all the grounds essential by the rule of common law to invest that determination with the remaining quality of " finalty."

It may be added, that the case is fully within the policy upon which the rule of *res adjudicatœ* proceeds.

It may be added further, that it is of no moment that the plaintiffs could not have had execution on the alleged judgment. The

possibility of an execution issuing is not made a feature in the statute definition of the term "judgment."

Nor was this feature necessary at common law. (*Dubois* v. *Dubois*, 6 Cow. 494; *Woods* v. *Gabill*, 4 Vt. 556; 6 Cal. 666; 7 Id. 228.)

The term judgment is, under the statute, synonymous with the term "adjudication." The modes of enforcing an adjudication are distinct from the adjudication itself, forming no part of its essential constitution. (*Heydenfeldt* v. *Towns*, 27 Ala. 423; *Watts* v. *Gayle*, 20 Id. 825; *Brown* v. *McDonald*, 1 Hill's Ch. R. 297; and see also, *Hardwick* v. *Hooks*, 8 Geo. 354; *Danington* v. *Borland*, 3 Port. 35.)

It may be added further, that any creditor proving before the Referee in *Meyer* v. *Kalkman*, and dissatisfied with the determination upon his claim, either as to the existence or amount of it, might have moved for a new trial, or have appealed.

It may be further named, that if the action had been framed directly upon the facts which we offered to prove, the defendants would have been estopped from denying that the plaintiffs were their creditors, and to the extent stated in the Referee's report. But why? Obviously, for the reason that there had been an adjudication upon both those questions. But "adjudication" and "judgment" are synonymous. Nor was it necessary to detail the facts at length. Under the rules of pleading it is not necessary to set forth records and written instruments at large; they may be declared on according to their legal effect. Therefore, if the record offered in evidence exhibited an adjudication or judgment in legal effect, then the complaint is properly framed, and the plaintiffs are entitled to the full benefit of the estoppel.

The question, then, comes to this: The plaintiffs have an admitted right; it can be enforced only by action. In an action properly brought, would not the record in *Meyer* v. *Kalkman* estop the defendants from denying the indebtedness which the record discloses? If it would not have the full effect of an estoppel, it is clear that it could have no effect whatever as an instrument of evidence; and to say this is subversive at once of the plainest rules in the law of evidence, and of the policy upon which they proceed.

An action of debt will lie on a chancery judgment. (*M'Kim* v. *Odon*, 3 Fairfield, 94; *Post* v. *Neafie*, 3 Carnes, 22; *Thrall* v. *Weller*, 13 Vt. 231.)

*Sidney V. Smith*, for Respondents.

There was no judgment entered at any time in the Superior Court of the city of San Francisco, in the suit brought by Chas. T. Meyer against Philip Kalkman, which created any personal liability on the part of either the plaintiff or defendant in that suit.

I.   By section one hundred and forty-seven of the Practice Act, the relief granted, if there be no answer, shall not exceed that which is demanded in the complaint.

The judgment or decree of May 6th, 1856, was entered upon the default of the defendant Kalkman in not answering.

The Court, therefore, had no power to grant any relief beyond what was asked by the complaint in the case.

All that the complaint prayed was a dissolution, an account, a Receiver, and that the assets of the firm should be ratably distributed among the creditors; and the judgment does not pretend to go farther than this.

II.   The action of *Meyer* v. *Kalkman* was a mixed action; it was *in personam* as between Meyer and Kalkman; it was *in rem* so far as the creditors of the firm of Kalkman & Co. were concerned. It was *in personam* as to Kalkman, because it sought a dissolution of copartnership. It was *in rem* as to the creditors, because it demanded that the assets of that copartnership should be distributed among the creditors.

The creditors were merely brought in that they might prove their debts—not as against Meyer or Kalkman, but as against the fund in the hands of the Court; and the reference was to ascertain who were the creditors and what were the sums respectively due to them—not in order that the Court might order the payment of those sums by Meyer or Kalkman, but merely that the Court might thereby be enabled to discover what was the *status* of the subject matter of the action, so far as respected the creditors—which subject matter was the fund—and thus direct its distribution according to the facts of the case.

Now, in the action *in personam*, the Court by its judgment determined that Meyer was entitled to a dissolution of the copartnership existing between him and Kalkman; and as to the action *in rem*, it determined that the assets should be distributed among the creditors of the firm.    The rights of the parties to the action were, therefore, settled.

The argument of the appellants, if it amounts to anything, is just this; That *every* final judgment or decree creates a personal liability.    If this doctrine be true, then upon every decree *in rem* an action may be brought *in personam*.

The cases in 6 Cow. 494; 4 Vt. 556; and 6 Cal. 666, cited by appellants, have no application.

The respondents fully admit the conclusiveness of the judgment of May 6th, 1856, but they deny it in the sense and to the extent that is claimed for it by appellants.

It is conclusive only in one respect: it puts at rest forever the question whether the appellants had any right to distribution of the funds in Court.

A judgment to be conclusive must be mutual in its operation. (1 Greenl. Ev. sec. 524.)    To test, therefore, the conclusiveness of the decree of May 6th, 1856, in the sense in which the appellants insist on, let it be supposed that Seligman & Co., instead of suing as they have done, had sued for the value of the goods sold and delivered by them to Kalkman & Co.    Could Kalkman & Co. have pleaded in bar of the action that Seligman & Co. had obtained a prior judgment against them, and as evidence of it have relied on the decree of May 6th, and the proceedings subsequent thereto? Would not the reply have been: That judgment was not a judgment against you; it did not enable us to have execution against you or your property; it was useless to us, except so far as it decided that we were entitled to have our distributive share of the fund which was in Court, and we have not out of that fund received the whole of our debt?    And would not such a reply have been a complete answer to such a plea in bar?

In *Mohler's appeal* (8 Barr, 31) the Court say: " It is alleged that judgment has been had for the arrear of rent now claimed, at least in part *de terris;* that this is a bar to a proceeding to charge the

alienee *personally*.   If the land was of value to levy the money by sale, there would be no necessity for this proceeding; but as it is notoriously otherwise, the parties are compelled to invoke the aid of the Orphans' Court.   A judgment *in rem*, without satisfaction, is no bar.   The remedies are cumulative, even if an action lies at common law."

Cope, J. delivered the opinion of the Court—Field, C. J. and Baldwin, J. concurring.

The evidence in this case was not sufficient to maintain the action. It was necessary for the plaintiffs to show a personal judgment to entitle them to recover; and the record in *Meyer* v. *Kalkman* was insufficient for that purpose.   The action in that case was for the settlement of a partnership and a distribution of the assets for the benefit of creditors.   A judgment was entered, dissolving the partnership and directing an account.   The plaintiffs were creditors, and the Referee who took the account reported in their favor the amount sued for in this case.   An order was made confirming the report, and directing a distribution of the assets upon the basis therein established.   We see nothing in these proceedings which can be regarded as amounting to a personal judgment.   Such a judgment would have been foreign to the purposes of the suit, and the relief granted was confined to these purposes.   If it had been the intention to go further, and bind the defendants by a personal judgment, such intention would doubtless have been expressed in some legitimate and proper form.   We think that the mere ascertainment of the indebtedness for the purpose of enabling the Court to make a proper distribution of the assets, cannot be regarded as a judgment *in personam* for the amount of such indebtedness. Something is due to the forms of the law in this respect; and while no particular words are necessary to constitute a judgment, enough should appear to indicate the intention of the Court to grant the relief which the judgment is relied upon as securing.

Judgment affirmed.