### RUTH KEELIKOLANI *vs.* LUNALILO TRUSTEES.


THE BILL and cross bill are to be taken together and treated as one cause. Defective allegations in the bill are aided by those in the cross bill. In this cause there was enough to give jurisdiction.

The death of one of several defendants before decree, but after the evidence was closed and submitted does not render decision made void or irregular.

Where nearly ten years had passed since the decree without appeal and where defendant took half her title sought to be established here from Kamehameha V., who had notice and fought the making of the decree, and where the record recites that in adjoining award were duly notified, in a question of boundaries which is a proceeding *in rem*, the defendant is estopped. It differs from an ordinary case in law or equity.

Boundary decisions should not be lightly questioned.

Opinion of the Court by AUSTIN, J.

The question in these cases comes before us on appeal from the decision of the Chancellor in equity, overruling the

demurrer to the original bill and allowing the demurrer to the cross bill. The original bill was in the nature of a bill *quia timet* to remove a cloud upon title to real estate. The cross bill sets up a claim in fee to about 1,000 acres of the land referred to in the bill.

"A cross bill is generally considered as a defense, and the original cause and the cross bill are but one cause. It is so effectual as a defense, that if a cross bill is taken as confessed it may be used as evidence against the complainant in the original suit on the hearing, and will have the same effect as if he admitted the facts in an answer." See Barb. Ch. Pr. Vol. 2, p. 127, Hemp *vs.* Mackrell, 3 Atk., 812; Field *vs.* Schieffelin, 7 John Ch. R., 249–52, Kent, Chancellor; Cartwright and another *vs.* Clark, 4 Metcalf, 104, 109–10.

The cross bill must relate to the former suit only. The bill and cross bill were therefore properly considered together by the Chancellor, and we shall so treat them here. If the original bill was in any respect incomplete or insufficient the defendant answer in the cross bill can be used by the plaintiffs in aid of their allegations. It is even better for that purpose than if written down in the original bill, for the defendant under oath affirms it to be true. The defendant, then, spreads upon the record a claim that she is the owner of the Ahupuaa of Waialae-nui, which property includes about 1,000 acres of land now held and possessed by the plaintiffs as alleged in the original bill.

Under all the authorities cited by the counsel for both parties, this sets at rest the question of jurisdiction to hear and determine this cause.

The second point made by the defendant is that the decree as to boundaries which he attacks was invalid, because it was entered after the death of Kamehameha V., one of the adjoining owners, who was a party to the proceeding to determine boundaries.

On examining the records it appears that there were several adjoining owners who were notified and took part in the proceedings.

There is no rule of law which requires that the death of one of so many, or of any less than all the parties defendant, should abate a proceeding where all the evidence is in, and the Court is ready to make its decision as shown in this case. Such a rule would require many unnecessary delays and ought not to be established.

The authorities cited by the Chancellor and the plaintiffs' counsel are enough we think to sustain the ruling below.

The third and last point made by the defendant is, that the statute as to settling boundaries was not complied with, because the defendant had no notice of the proceeding and was entitled to it, and so she is not bound by it. Section 4 provides that the petition shall specify the names of adjoining owners where known, and Section 5 provides that the owners of adjoining lands shall be notified. This means such owners as are specified in Section 4 that is known owners. In this petition the party named as owning Waialae nui, now claimed by defendant, is Victoria Kamamalu, the sister of the defendant and Kamehameha V. Victoria Kamamalu was then dead. After this lapse of time it is to be presumed that the ownership of this land was alleged to be in the one dead, the original patentee, because the petitioners did not certainly know who were her heirs. As matter of fact, Kamehameha V. was notified, and strenuously contested the boundary before the Commissioner.

The statute does not point out how parties shall be notified, or proof of notification made or recorded. Personal service is not necessary under it. The record recites that all the adjoining owners were notified. This is presumptive proof of it, and, after being unquestioned for nearly ten years, we must hold it conclusive.

In actions of ejectment the Code, Section 1,129, says : "It shall be sufficient to serve the party in actual possession ; or,

if nobody is in possession, to post a notice upon the premises." In analogy to this Kamehameha V., who was in possession, was notified and fought. It is to be presumed that the Court believed him to be the owner. Before the boundary decision was made Kamehameha V. died, and the defendant avers that she then became his heir to one-half the land she now claims of the plaintiffs. For that one-half she is certainly bound by the acts of Kamehameha V., from whom she inherits it. The defendant for that half and on her own account did not appeal, as she might, from the boundary decision. She allowed nearly ten years to pass before questioning the boundaries as settled. This was laches on her part, and we must hold her conclusively bound by the decision of which she complains.

We discriminate between a matter for the settlement of land boundaries and an ordinary case at law, or in equity. The proceeding before the Boundary Commissioner is in the nature of a proceeding *in rem*. He is to determine certain geographical lines—that is, he is to ascertain what in fact were the ancient boundaries of lands which have been awarded by name only. He gives notice to adjoining owners so far as they are made known to him. If the boundaries of such conterminous lands have been previously fixed by a grant with surveyed lines, or by a judgment of a Boundary Commissioner, such lines cannot be varied by subsequent determinations of the Commissioner. If the boundaries of any neighboring land have not been determined, then it is made the duty of the owner or owners thereof to apply to the Commissioner for settlement; and it was equally the duty of the owners of Waialae-nui to have gone on their petition before the Commissioner without notification on the part of another party.

At the time of the passage of the Act to establish a Boundary Commission, the boundaries of lands known and awarded by names by the Land Commission were in great uncertainty.

Ruth Keelikolani *v.* Lunalilo Trustees.

The work of the Boundary Commission has been of great utility to the country in the proper settlement of such bnoudaries. In the absence of the appeal provided for by the Act, we ought not to allow their decisions to be lightly questioned.

The decisions below must be affirmed, with costs.

S. B. Dole for plaintiffs.

A. S. Hartwell for defendant.

Honolulu, March 16, 1883.

### OPINION OF CHANCELLOR JUDD APPEALED FROM.

This is a bill in equity alleging that the plaintiffs are seized and possessed of the ili aina of "Kipahulu," which has been awarded to W. C. Lunalilo by Award of the Land Commission 8,559, B, Apana 32, by name, and that W. P. Kamakau, Commissioner of Boundaries for Oahu, settled the boundaries of this land in 1872 as appears by his certificate and description annexed to the bill, that on the 9th of July, 1882, the premises were offered for sale at auction, and Mr. S. K. Kaai then the defendant's agent and attorney publicly protested against the sale and claimed that the description of the land proposed to be sold included about 1,000 acres of land of the said Keelikolani, whereby the plaintiffs were compelled to withdraw the premises from sale to the damage of the estate, and that the said Kaai acting for the defendant has not ceased to claim a portion of the said premises and to threaten to bring proceedings in relation to the same, by which acts a closed sale is thrown upon the title to the premises and the value injured. And whereas the plaintiffs are required to sell the premises by the terms of the will by which the Trustees cannot do so without great sacrifice, in consequence of the injurious and false representations made by the said Kaai. The plaintiffs pray that the defendant may be required to prove her claim to the portion of the premises claimed by her, and that she be perpetually enjoined and restrained from

bringing any action for the possession of the premises, etc.

To this bill the defendant demurs, alleging cause, that there is, in the absence of a statute, no general jurisdiction in equity against the exercise of an apparently legal right, and the Court cannot enjoin any person from asserting his title to lands by words. Some equity on the part of the plaintiffs is essential to the exercise of the jurisdiction.

Head *vs.* Fordyce, 17 Cal., 152, is cited by plaintiffs' counsel in support of the proposition "that the plaintiff has a right to be quieted in his title whenever any claim is made to real estate of which he is in possession, the effect of which claim might be litigation or a loss to him of the property." In this case the defendant had obtained a decree seeking to condemn the property by virtue of a lien older than plaintiffs' title, and the Court held this to be a cloud upon the title, also the remedy sought in this case was in pursuance of a statute giving a party in possession of real estate a right of action to determine adverse claims.

We have no such statute. The quotation from Bispham's Equity, p. 603, is to the effect that a party in possession can have his title quieted where he is embarrassed by having hanging over him a hostile claim which, though not actively asserted and of no validity is calculated to affect the market ability of the title.

In Munson *vs:* Munson, 28 Conn., 586, the plaintiff claimed relief against an injury threatened to his title from the record of a certain deed and from certain judicial proceedings, and the Court denied his relief because he had the legal title by an older deed and could dispossess the defendants who were in possession without shadow of right by an action of ejectment.

The Court in this case said, the remedy in this branch of equity jurisdiction is preventive and "very much must depend upon the extent and imminence of the danger threatened and the view which will be taken of the case by a discreet

Judge." It is said that this Court exercised a similar juris-
diction in the case of Trustees of Lunalilo *vs.* Haalilio and
others, heirs of C. Kanaina, August, 1880. Reference to this
case shows that there was a difference as to the construction of
the will of Lunalilo which is a proper subject of equity juris-
diction. After a somewhat extended examination I fail to
find a case where equity has enjoined the occasional oral asser-
tion of a claim to land in possesssion of another.

But the cross bill filed by defendant alleges that the certifi-
cate of boundaries of the land of Kapahulu includes about
1,000 acres of her land of Waialae-nui, and that it is null and
void for reasons alleged, and prays that it be so decreed. It
seems to me that this is inconsistent with her demurrer to
plaintiff's bill. Having sought herself by this cross bill to
assert her title to this land by having the certificate of boun-
daries which include it declared void, I think she is now
estopped to say that this assertion is no cloud on the plaintiff's
title. If the certificate be bad, then she is entitled to have it
set aside ; if it is good, there is equity in having her claim
that it is bad put at rest—and this could not be done if the
demurrer to the plaintiff's bill was sustained. Entertaining
the belief that the assertion of the error in this certificate of
boundaries is a hostile claim affecting the marketability of
the title, I overrule the demurrer to the bill.

We are left now to consider the question raised by the
cross bill and demurrer, precisely as if the matter of the
cross bill had been raised by answer. This question is,
whether the certificate of the boundary of Kapahulu is valid
and binding.

I find that the application for settlement of boundaries of
this land was filed before W. P. Kamakau by the guardian of
W. C. Lunalilo on the 14th January, 1869, reciting that it
was bounded as follows : " On the eastern side by 'Kahala,'
property of Victoria Kamamalu ; eastern side by ' Waialae-
nui, property of Victoria Kamamalu ; northern side by

80

'Waiomao,' a Crown land; western side by 'Kekio,' pro-
perty of L. Keekapu; western side by 'Pahoa,' property of
J. Kahai; western side by 'Kaluaolohe,' property of Kaha-
naumaikai; western side by 'Kukunukuaula,' property of
Captain Mahuka; southern side by 'Kaneloa,' a Crown land;
southern side by 'Kaluaolohe,' a Government land." And
the record of October 23, 1869, recites that "all the parties
whose lands adjoin Kapahulu had been summoned to meet at
the Commissioner's house at Peleula, Honolulu, Oahu, at 10
A.M., to hear the taking of testimony in reference to the land
of Kapahulu," etc.

The Court is aware that, after the death of Kekuanaoa, the
father of Victoria Kamamalu (to whom the land of Waialae-
nui was awarded), his son Kamehameha V., took possession
of the real estate as heir, and ignored the claims of his half-
sister, Ruth Keelikolani, the present defendant. We must
consider Kamehameha V. to have been a tenant in common
with the defendant, and he was in possession of the land,
having ousted his co-tenant. That Kamehameha V. had
notice of this proceeding cannot be doubted. The record
shows that all persons whose lands adjoined the land whose
boundaries were to be defined, including the lands of Victoria
Kamamalu, were duly notified. The record of April 27,
1872, is significant; it recites that "Hons. C. Kanaina,
C. R. Bishop, His Excellency John O. Dominis, L. Keekapu,
and J. Kahai, were cited to appear at the Court House at 10
o'clock A.M. on the day above named to hear the judgment to
be rendered on the (boundaries of) land of Kapahulu—an
iliaina of Waikiki, Oahu; and that on that day came J. W.
Makalena, by the order of J. O. Dominis, the Commissioner
of the lands of the King and of the Crown lands, and moved
that the judgment be postponed in order that they might
introduce further witnesses in reference to the boundary
between Waialae and Kapahulu, and the hearing was post-
poned to the 3d May; and testimony was taken on the 3d,
and concluded on the 6th May."

Ruth Keelikolani *v.* Lunalilo Trustees.

The statute requires that "owners" of adjoining lands be notified of the hearing. I think the notice to Kamehameha V. was sufficient. The Commissioner had no jurisdiction to adjudicate the title between Kamehameha V. and his half-sister. It was enough that Kamehameha V. was in possession claiming title, and the adjudication as to the boundaries bound the real owners.

But the judgment was not signed till the 23rd December, 1872, Kamehameha V. having died on the 11th of the month. It is claimed that this judgment was void, having been made after one of the parties was dead.

This is a question of considerable difficulty. By the common law it would seem that if the death of a party occurred after the opening of the term of the Court when judgment was rendered the judgment would not be void.

Freeman on Judgments, Section 140, says: "If jurisdiction be obtained over the defendant in his lifetime a judgment rendered against him subsequently to his death is not void." And *Id.*, 153, "judgment for or against deceased persons are not regarded as void on that account, and the failure of the Court to cease to exercise its jurisdiction over a party whenhe dies is an error to be corrected by appeal, if the fact of death appears on the record and by writ of error if the fact must be shown *aliunde.*"

The Court has the power of entering judgments and decrees *nunc pro tunc*, agreeably to the maxim *actus curiae neminem gravabit. Id.*, Section 56, "the necessity for entering judgments as of some day prior to this rendition arose chiefly, if not exclusively, in those cases where after the trial and submission of a cause, one of the parties died, as no judgment could properly be entered bearing date subsequent to his death. As the suitor who brought his action to trial and caused it to be tried and submitted, had manifestly been guilty of no laches, the Court protected him from any prejudice he might suffer by the death of his adversary after such

submission, and instead of permitting the action to abate, directed the judgment to be given effect, if necessary as far back as the date of the submission. Thus the time taken by the Court for deliberation was, as far as possible prevented from working injustice to the party who should, in the end, prevail in his suit." *Id.*, Section 57. See 7 Mass., 393; 2 Cush., 52.

If the petitioners before the Commissioner of Boundaries had made a suggestion of the death of Kamehameha V., the Commissioner would have been empowered to render his judgment *nunc pro tunc*, dating it some date prior to December 11. This not having been done, the judgment rendered was only liable to be corrected by appeal, or writ of error. It was plainly within the province of the administrators of Kamehameha V. to have appealed if they so desired. But ten years have now elapsed, and I am of the opinion that it is now too late to impeach the judgment for the error alleged, or to appeal from it.

The demurrer to the cross bill is sustained. The defendant may answer the bill in twenty days, or judgment will be entered for the plaintiffs on the bill.

Honolulu, January 27, 1883.