# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## APRIL TERM, 1866.

---

HENRY W. PECK AND MARIA ANTONIA PECK, HIS
WIFE, *v.* JOHN P. P. VANDENBERG AND F. A.
HIHN, *et als.*

APPEAL FROM ORDER DENYING A NEW TRIAL.—An appeal from an order denying
a new trial must be taken within sixty days after the order is made and entered in
the minutes of the Court.

REVIEW OF FINDINGS OF A REFEREE.—The Supreme Court will not review the
findings of a referee to ascertain whether they are contrary to the evidence except
on appeal from an order denying a new trial.

APPEAL IN AN ACTION OF PARTITION.—On the 22d of April, 1863, no appeal could
be taken from an interlocutory judgment in an action for partition, determining
the interests of the several parties in the property, and directing a partition to be
made. Nor was an appeal from such a judgment, rendered before the passage of
the Act, given by the Act of March 23d, 1864.

FINAL JUDGMENT IN PARTITION FROM WHICH AN APPEAL LIES.—The judgment,
in an action for partition, entered upon the confirmation of the report of the com-
missioners appointed to make the partition, is the final judgment from which an
appeal lies.

APPEAL FROM INTERLOCUTORY JUDGMENT IN PARTITION.—If the interlocutory
judgment in partition adjudges that one of the parties has no interest in the prop-
erty, it is not a final judgment as to him, from which he can appeal.

WHEN A DEED TO A MARRIED WOMAN IS A DEED OF GIFT.—A deed of convey-
ance from a mother to her children, some of whom were married women, con-
tained the following recitals : "These are, therefore, to acknowledge that my
beforementioned children have each an interest of one undivided ninth part of
each of said ranches, both of which are embraced in the last mentioned grant, and
are entitled, under each of said grants, to the enjoyment of the same in common
with me.   And this indenture further witnesseth, that, in order to secure fully to
my said children the aforesaid interest in the above mentioned grants, I, the said
Martina Castro, for and in consideration of the natural love and affection which I
have and bear to my said children, and for the further sum of five dollars, to me
in hand paid at and before the sealing and delivery of these presents, the receipt
whereof is hereby acknowledged, have granted, bargained, sold, and conveyed,"
etc. ; *Held*, that the deed upon its face imports a gift, within the meaning of the
provisions of the Constitution and Statutes of California relating to the separate
property of married women, and not a conveyance upon a money consideration ;
and that the legal operation of the instrument is to convey a separate estate to the
grantees.

INTRODUCTION OF A DEED IN EVIDENCE.—The objection to the reception of a deed
in evidence, that the grantor had conveyed to another person his interest in the
property granted, before the execution of the deed in question, is not tenable—
such objection goes to its effect after it has been received in evidence, and not to
its reception.

*Per* SAWYER, J. :

PAROL EVIDENCE TO SHOW THAT THE CONSIDERATION NAMED IN A DEED DID
NOT PASS.—Parol evidence may be introduced to show that a deed from a mother
to her married daughter, which expresses upon its face a consideration of love and
affection, as well as a valuable consideration in money, was given without any
money consideration having passed, for the purpose of proving the deed to have
been one of gift, and that the land conveyed became the separate property of the
daughter, and not the common property of the daughter and her husband.

APPEAL from the District Court, Third Judicial District,
Santa Cruz County.

The certificate of acknowledgment of the deed from Nica-
noa Lajeunesse and Francisco Lajeunesse, her husband, to
Vandenberg, was made by the County Clerk of Santa Cruz
County.   The certificate did not show that the wife was made
acquainted with the contents of the instrument.   After it had
been introduced in evidence, the defendant Hihn offered in
evidence a deed from the same parties to himself, dated July
23d, 1860, with the acknowledgment properly certified by a
Notary Public.   Defendant Vandenberg, by his attorney,
objected to its being received in evidence, because the grant-
ors had no interest in the land at the time of its execution,

and the referee overruled the objection, and the defendant Vandenberg excepted. The referee found how much each one of the parties owned in the rancho, without finding the particular facts upon which the fact of ownership was based.

The following is the deed from Donna Martina Castro to her children, which the Court holds to be a deed of gift:

CALIFORNIA, SANTA CRUZ COUNTY.

This Indenture, made and entered into this the twenty-ninth day of August, eighteen hundred and fifty, between Donna Martina Castro, of said county, wife of Louis Depeaux, and her children, Nicanoa Coto, wife of Francisco Young, Maria Louisa Coto, wife of Ricardo Juan, Carmel Lodge, wife of Thomas Fallon, Maria Josepha, wife of Lambert B. Clements, Maria Antonia Lodge, a daughter, not married, Maria Helena Lodge, a daughter, not married, Maria Guadalupe Lodge, a daughter, not married, and Miguel Antonio Lodge, a son, all of said County of Santa Cruz, witnesseth: that whereas, on the twenty-third day of November, eighteen hundred and thirty-three, the said Donna Martina Castro received from J. Figueroa, the Governor of Upper California, a grant to herself and family of a tract of land two miles in length by a half a league in breadth, a little more or less, with certain conditions, which have been performed, and limitations that have since been released; and whereas, also, the said Donna Martina Castro afterwards petitioned Micheltoreno, the then Governor of both Californias, for the removal of the limitations and restrictions under which the above mentioned ranch or tract of land was held, and in addition for a new title to said ranch, and for another tract of land on mountain, which new title was granted to her and to her family to an extent of territory extending as far as the Luguna del Sarjento and La Chuchita, including the Loma Prieta, which grant was made to me and family by Micheltoreno, through an order to his Secretary, Manuel Jimeno, without any conditions or limitations: These are, therefore, to acknowledge that my before-mentioned children have each an interest of one undivided

ninth part of each of said ranchos, both of which are embraced in the last mentioned grant, and are entitled, under each of said grants, to the enjoyment of the same in common with me. And this indenture further witnesseth, that, in order to secure fully to my said children the aforesaid interest in the above mentioned grants, I, the said Martina Castro, for and in consideration of the natural love and affection which I have and bear to my said children, and for the further sum of five dollars, to me in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, and conveyed, and do by these presents grant, bargain, sell, and convey, unto the said Nicanoa Coto, Maria Louisa Coto, Carmel Lodge, Maria Josepha, Maria Antonia Lodge, Maria Helena Lodge, Maria Guadalupe Lodge, and Antonio Miguel Lodge, and to each of them, and to their heirs and assigns, the one undivided ninth part each, (I retaining the other ninth part,) of the entire rancho embraced in the two above mentioned grants, extending from the Pacific Ocean to the Laguna del Sarjento and the Chuchitas, with all the rights, members, and appurtenances belonging—the said children holding each an undivided ninth part of said rancho, and I one undivided ninth part of the same ; to have and to hold the said above granted premises to each of them, my said children, and their heirs and assigns, and to their own proper use, benefit, and behoof forever. And the said Martina Castro, her heirs, executors, and administrators, will forever warrant and defend the title thereof to her said children. And this indenture further witnesseth, that the said Martina Castro does at once and immediately give to all of her said children the enjoyment and possession of the said rancho, in common with her, and the use of the timber thereon for building, fencing, fires, etc., reserving to herself, however, for the use of herself and husband, Louis Depeaux, her son Miguel Antonio Lodge, and her daughter, Maria Guadalupe Lodge, the sole and uninterrupted possession of so much of said rancho—and on which her house now stands—as is included in the boundaries to commence at the mouth of the

Soquel River; thence, up to the main crossing place below the old saw mill; thence, in a straight line to a gulch in the rear of the house; down said gulch to the ocean; and thence back to the place of beginning; to retain the possession of said tract of land until such time as the rancho may be partitioned off to the joint owners, according to law.

In witness whereof I have hereunto set my hand and seal, the day and year above written.

her
Martina — Castro.
mark.

The other facts are stated in the opinion of the Court.

*Sloan & Provines*, for Appellant.

*R. F. Peckham*, for Respondents.
*Yale & McConnell*, also for Respondents.

It is shown by the face and context of the deed that it was a *gift*.

The Act of April 17th, 1850, provides that "All property, real and personal, of the wife, owned by her before marriage, and that acquired afterwards by *gift, bequest, devise, or descent*, shall be her separate property." (Act relative to Husband and Wife; Acts of 1850, p. 254, Sec. 1.)

By the same Act, all property acquired by purchase by either party during coverture becomes common property. (Ibid, Sec. 2.)

In considering this statute, it is essential that we keep in view its origin and the purpose of its enactment. Nothing is more certain than that we have transplanted our whole jurisprudence, so far as it relates to the rights of property between husband and wife, from the civil law, or rather from that modification of the civil law which prevailed in Louisiana, Florida, Mexico, and other Spanish colonies.

This is shown not only by the history of our State, but appears also from a comparison of the provisions of our Act with those of the civil law and of codes founded upon it.

The relation which, with us, the husband and wife occupy towards their common property, is identical with the "partnership" or "community of acquets and gains" of the civil law, while our phrase "common property" is the exact synonym of the "biens gananciales" of the Spanish and Mexican law writers. So, too, our phrase "separate property," applied to the wife, exactly corresponds to and embraces her "dotal and paraphernal" property, under the codes of Louisiana, Justinian, and Napoleon. (Vide *Smith* v. *Smith*, 12 Cal. 216–226 ; *Meyer* v. *Kinzer and Wife*, 12 Cal. 247–255 ; *Scott* v. *Ward*, 13 Cal. 470 ; *Tustin* v. *Faught*, 23 Cal. 241 ; *Tryon* v. *Sutton*, 13 Cal. 493 ; Escriche—word, *Biens gananciales*, p. 366.)

It is quite manifest that the word "*gift*" in the Act referred to has not the same meaning as the same word has at common law. At common law the methods of acquiring real property were divided into descent and purchase, and every acquisition which was not a descent was a purchase. (2 Black. Comm. 201 ; 3 Cruise's Digest, 317.)

After the passage of the Act of April, 1850, that Act having provided no special mode of conveyance, it became necessary to resort to existing forms in order to vest property in husband or wife by way of gift.

The form of deed adopted by Martina Castro is that most usual in California for the assurance of real property. The operative effectual words of conveyance are, "grant, bargain, sell, and convey," and the consideration mentioned is "the *natural love and affection* which the grantor bears for her children, together with the further sum of *five* dollars." This deed, when before this Court on a former occasion, was incidentally termed by a learned Judge a "bargain and sale;" but the question of the character of the deed was not then in controversy ; and at all events, the Court could only have referred to the verbal structure of the instrument, and not to its legal character as a conveyance.

"A conveyance *without* a valuable consideration cannot operate as a *bargain and sale* under the Statute of Uses. And

to give it the effect of a covenant, to stand seized, etc., it must be made on the consideration of blood or marriage." (*Jackson* v. *Saunders*, 1 Cowen, 622 ; *Jackson* v. *Delany*, 4 Cowen, 427 ; *Johnson* v. *Florence*, 16 Johnson, 47 ; Cruise's Digest, Title Deed, Ch. 12, Sec. 20.)

"A deed, under the Statute of Uses, can convey no title unless a *good* or a *valuable* consideration is *expressed* on the face of it, or, if not so expressed, can be shown *aliunde*." (*Spring* v. *Hanks*, 5 Iredell, 30 ; 2 Washburn on Real Property, 126–131.)    So, too, our own Supreme Court.    (*Barker* v. *Koneman*, 13 Cal. 9, 10.)

Admitting, however, that in countries where the Statute of Uses prevails, the mere words "bargain and sale" in a deed do of themselves import a consideration of value, or money ; still we say that they can have no such effect with us, (we not having the statute.)

Our view is, that, whereas in England and in some of the States these words are *exclusively* words of contract, evidencing a sale, with us they are like "grant," "convey," "lease," etc., exclusively words of assurance evidencing a *transfer*. The deed of "bargain and sale," or more accurately, deeds containing the words "bargain and sell," have become the common, we may say the universal conveyances with us, and were so in April, 1850, when the Act in question passed. This was so, even before the adoption of the common law as the rule of decision.    Doubtless a conveyance in the exact words of an ancient feoffment or gift in tail, would still be effective with us to pass an estate ; but as a matter of fact, all of these old forms of conveyance have become obsolete in practice.    Notwithstanding that we have not re-enacted the Statute of Uses, (27 Henry 8,) it is notorious that our conveyances are, as respects *form*, exclusively those, or more properly speaking, one of those which originated in that Act.    For although we have no doubt that a "lease and release," "covenant to stand seized," or other statutory conveyance, would be as effective with us as in England, yet as they are

3

unnecessary, and in practice are never used, we may say that our *sole* form of conveyance is " bargain and sale." So universal have the words " bargain and sell " become in our deeds, that being common *to all* they have very properly ceased to designate or describe any *particular kind.*

The truth is, deed of " bargain and sale," or deeds containing these words, have with us a very different operation from what they have in England, and in many of the other States. Whatever may be the effect of such words in a deed under the Statute of Uses, they are with us words of *conveyance* merely, and not words of *contract* or *purchase,* and operate to pass the land, not to raise a use.

Their use in the deed of Martina Castro is not inconsistent with a *gratuitous* conveyance or gift.

Our next position is, that whatever effect might be attributed to the words " bargain and sell " if they stood by themselves in the deed, they, like all other legal phrases, are subject to the intention of the parties, as shown by the whole context of the instrument. And we further contend, that in the case at bar, the whole deed shows plainly, that Martina Castro intended to convey the undivided interest to Nicanoa Lajeunesse by *gratuitous title,* upon the consideration of blood and maternal affection.

*Sloan & Provines,* in reply.

In attempting to make it appear that this conveyance was a gift, counsel contend that the word " gift " in the Act concerning husband and wife, has not the same meaning as the same word has at common law; that our phrase " separate property," as applied to the wife, corresponds to the terms dotal and paraphernal property, as used in the codes of Louisiana, etc., and that the provisions of our law, in so far as it relates to the rights of property of husband and wife, were transplanted from that modification of the civil law found in Louisiana, etc. But we have seen that the phrase " separate property " is used in our State Constitution in its common law sense, (*George* v. *Ransom,* 15 Cal. 324,) and the word

" gift," used in the same section, must therefore be regarded as used according to its common law signification ; and it cannot be that they are used in a different sense in the Act passed in pursuance of this very constitutional provision.

And if these provisions of our law were borrowed from the civil law, why was not the appropriate civil law phraseology also adopted ?   Why speak of property acquired by " gift, bequest, devise, or descent," all common law modes of acquisition ?   Why speak of the wife's " separate," rather than of her " paraphernal property ?"   It cannot be that the framers of our Constitution intended to " transplant " civil law ideas as to rights of property as between husband and wife, and yet at the same time so studiously to avoid the civil law phraseology appropriate to express those ideas; or that they attempted to express civil law principles, and to clothe civil law ideas, in common law language.   Had they intended to engraft the rules of the civil law in this particular upon our system, they might have done so by the use of a very few words, and without tedious definitions or carefully studied distinctions.   Nothing, however, is said of dotal or paraphernal property, nothing of acquests and gains, nothing of community debts, nothing of donation or testament, nothing of onerous or lucrative title.   These terms have no place in our law, nor can they be appropriately used with reference to any property acquired since the adoption of our Constitution and the passage of the Act in question.

That the property in question here was acquired in this State during the marriage, and subsequent to the passage of the Act concerning husband and wife, is admitted, and it only remains to be determined whether it was acquired by either of the common law modes mentioned in the Constitution and the Act, viz : by " *gift, bequest, devise, or descent.*"

The counsel admits that in England the words bargain and sell " are *exclusively* words of contract evidencing a sale," but contends that " with us they are exclusively words of assurance evidencing a transfer."   But why so ?   If these are not words of contract evidencing a sale, what words are used, and

what words could possibly be used for that purpose? It is said the deed of bargain and sale "has been the common, we may say the universal conveyance with us, and was so in April, 1850." Even if this were true, we are unable to perceive how it changes or affects the necessary import of the words. But, in point of fact, it is not true; it is notorious that the common, if not universal mode of conveyance in 1850 was by quit claim deed, the operative words of which are "remise, release, and quit claim." And this form of deed has continued to be the principal mode of conveyance to the present day.

By SAWYER, J., the other members of the Court concurring specially:

This is an action for the partition of the Soquel Rancho, situate in the County of Santa Cruz. The title of the plaintiff to a one-ninth interest, as alleged in the complaint, was admitted both in the answer of Hihn and that of defendant Vandenberg, but the latter alleged that he was the owner of one ninth by title derived from Martina Castro through Francisco Young (Lajeunesse) and Nicanoa his wife, by their deed to him executed on the 31st of January, 1854. Hihn denied this claim of Vandenberg, and alleged title in himself to nine hundred and sixty (960) three thousand two hundred fortieth (3,240) parts of the rancho. The case went to a referee under an order to try the issues and report a "finding" thereon. The referee reported, among other things, that Hihn was the owner in fee simple of seventy-one two hundred seventieths of the property, and as to the remaining fractional interests, they were reported to be vested in other parties to the suit; but the claim of Vandenberg was not found either in whole or in part.

On the 22d of April, 1863, an interlocutory judgment was entered upon a confirmation of the report, and the case was sent to Commissioners; and on the coming in of their report a final judgment was entered in the action July 25th, 1864.

The appeal is from both judgments, and from an order overruling Vandenberg's motion for a new trial.

Firstly—We cannot consider the questions made upon the sufficiency of the evidence to justify the findings of the referee, for the order overruling the motion for a new trial was made eighteen months before the appeal from the order was taken. The objection that the findings were contrary to the evidence, as well as the exception to the report taken by the appellant on the ground that it did not set forth facts but mere legal conclusions, is overruled on the authority of *Hihn* v. *Peck et als.*, post.

No appeal lay from the interlocutory judgment at the time it was entered, nor was one given by the Act of March 23d, 1864. (*Gates* v. *Salmon*, 28 Cal. 320.) But the appeal from the judgment entered upon the confirmation of the report of the Commissioners was properly taken as being the judgment in the case, having the quality of finality. (Practice Act, Sec. 336 ; *Gates* v. *Salmon*.) The point made by the respondent, that the interlocutory judgment was a final judgment, so far as Vandenberg's title is concerned, is not in consonance with the views expressed by our predecessors in *Seligman* v. *Kalkman*, 17 Cal. 152, and is directly opposed to *Gates* v. *Salmon*. We therefore consider the appeal from the final judgment as having been well taken, considered as a matter of procedure, and that the errors of law specified in the statement on appeal are regularly here and open to review.

Secondly—It appears that the rancho belonged originally to Martina Castro as her separate property, and that she, " in consideration of love and affection and of five dollars to her in hand paid," conveyed one ninth of the rancho undivided to each of her eight children, on the 29th day of August, 1850. At that date Nicanoa Coto, one of the children, was a married woman—wife of Francisco Lajeunesse—which fact appeared on the face of the deed ; and both the defendants Vandenberg and Hihn claim the one ninth deeded to her by her mother—Vandenberg by a deed purporting to have been executed to him by Lajeunesse and wife, January 21st, 1854,

and Hihn by a deed to him from the same parties, dated July 23d, 1860. Hihn took with notice of the prior deed.

The deed to Vandenberg was not properly acknowledged by Mrs. Lajeunesse, but it was claimed by Vandenberg that the one ninth became and was the common property of Lajeunesse and his wife under the deed of Mrs. Castro, and, therefore, that the deed to him—Vandenberg—passed the title to the one ninth as the deed of the husband. Hihn thereupon offered to prove that no money was paid or agreed to be paid to Mrs. Castro in consideration of the conveyance to her children, but, to the contrary, that the conveyance was in consideration of love and affection alone. The testimony was objected to, the objection was overruled, and Vandenberg excepted.

It is insisted by the appellant that the ruling was erroneous, on the ground that Hihn was estopped by the deed from Martina Castro to her children from denying the money consideration therein named.

*Can parol testimony be received to show that the deed of a married woman of her separate property, expressing a consideration on its face, was a deed of gift?*

This ruling presents a question of vast importance to the interests of the people of California. I have, therefore, fully investigated the point, together with the cognate questions, and shall dwell at some length upon them, quoting liberally from the authorities.

It is admitted that a receipt in a deed acknowledging a payment of the consideration may be varied, or contradicted by parol evidence in an action to recover the purchase money, but, it is said, that the consideration cannot be varied by parol proof with a view to affect the operation of a deed as a conveyance, and numerous common law authorities are cited to establish this proposition. It is then assumed that, to prove that no money was paid, for the purpose of showing the conveyance to have been intended as a gift, and not a sale for a money consideration, would be to contradict the deed for

the purpose of controlling its operation, within the meaning of the rule.

I shall first consider the common law authorities, and endeavor to ascertain the import of the rule, as it now stands, with the limitations and restrictions put upon it in the modern American decisions. But before proceeding, it is proper to remark, that the precise question now presented never did arise, and never could have arisen, under the common law system unmodified by constitutional, or statutory provisions similar to those in force in this State; and it will be hereafter seen, that the constitutional and statutory provisions modifying the common law rights of husband and wife must be allowed some force in determining the question in issue. The common law cases can only furnish analogies more or less remote, and those most nearly analogous, unless I greatly misapprehend their import, will be found to harmonize with the construction maintained in this opinion.

In the earlier cases there was some conflict as to whether the express consideration of a deed could be contradicted by parol·evidence for any purpose, but in the great body of modern authorities it is held, that, for at least all collateral purposes, the real consideration may be shown in matters arising between parties and privies, as well as between strangers, *and the rule never did apply to strangers to the deed.* The question is as fully and ably discussed, perhaps, in the principal case cited by appellant's counsel, (*McCrea* v. *Purmort*, 16 Wend. 465) where the authorities are reviewed, as in any other. In that case the Chancellor had admitted testimony to show that the consideration of the deed was iron, and not money, as expressed in the deed. The last point upon which the authorities divided was, that although you might show a different consideration, you could not show a consideration of a different species from that expressed in the deed, as iron in the place of money, or a good consideration, such as love and affection, as contradistinguished from a valuable one, as money or other valuable articles. But the case cited (page 471) and other modern cases show that there is no ground for this dis-

tinction. And it was so held in *Coles* v. *Soulsby*, 21 Cal. 51, which case I shall, in the course of this opinion, endeavor to show, is, so far as it is at all applicable, against the position it is cited to sustain. The result of the authorities as stated in *McCrea* v. *Purmort* and in the cases there cited, is this : "A party is estopped by his deed. He is not permitted to contradict it; so far as the deed is intended to pass a right, or to be the exclusive evidence of a contract, it concludes the parties to it. But the principle goes no further. A deed is not conclusive evidence of everything it may contain. For instance, it is not the only evidence of its execution, nor is its omission of a consideration conclusive evidence that none passed ; nor is its acknowledgment of a particular consideration an objection to other proof of other and consistent considerations," (473.) "Looking at the strong and overwhelming balance of authorities, as collectable from the decisions of the American Courts, the clause in question, even as between the immediate parties, comes down to the rank of *prima facie* evidence, except for the purpose of giving effect to the operative words of the conveyance. *To that end alone is it conclusive*," (475.)

"A man is estopped by his deed *to deny that he granted*, or that he had a good title to the estate conveyed ; but he is not bound by the consideration expressed, because it is known to be arbitrary, and is frequently different from the real consideration of the bargain." (*Wilkinson* v. *Scott*, 17 Mass. 257.) "It is perfectly well settled that a consideration expressed in a deed cannot be disproved, for *the purpose of defeating the conveyance*, unless it be on the ground of fraud. Thus, where a consideration in money is expressed in a deed of bargain and sale, no averment is admissible that no money was paid, in order *to show that nothing passed* by the deed *for want of a consideration in money*." (*Moore* v. *Shattuck*, 4 N. H. 232.) "The deed to Blucker acknowledges that there was a consideration, and the *grantors and those claiming under them* are estopped from denying that a consideration was paid. They may disprove the payment for the purpose of recovering the

consideration money ; but they cannot do so for the purpose of *destroying the effect and operation of the deed.*" (*Grant* v. *Townsend*, 2 Hill, 557.) The late Chancellor Kent states the rule thus : " If a consideration be expressed in the deed, *the grantor* is estopped and cannot be permitted to aver against it, unless there be fraud or illegality in it, and then he may show it." (4 Kent Com. 515.) I have given the rule as stated in the language of many distinguished jurists, so that the entire field of the exclusion of parol testimony on the point in question, by the rule, as now established and limited, may be clearly seen. Now, what is the origin, purpose and scope of the rule thus stated ? The principal purpose of a deed is not to express a consideration, but to create or pass an estate. The statement of a consideration is not one of the terms or covenants of the contract. It was not necessary in a deed of bargain and sale, at common law, to express a consideration ; but it was necessary that there should in fact be a consideration, and that the consideration should be a *valua ble*, as contradistinguished from a *good* one. Without a valuable consideration, the deed of bargain and sale would not raise a use ; and if there were none in fact, and none expressed in the deed, and no use was declared, there was, at common law, a resulting trust in favor of the grantor, and the operation of the deed would be defeated. If, then, the grantor of a deed of bargain and sale, which expressed a money consideration, should be permitted to prove by parol testimony that no money was in fact paid, he would be permitted to show, in opposition to the deed itself, that he had made no conveyance of a beneficial interest at all, and thereby prevent any beneficial estate from passing from him by the deed. This the policy of the law would not permit him to do, and he was held estopped by his deed from showing the fact for the purpose of preventing his deed from operating to pass an estate. Says Mr. Justice Daggett, in *Belden* v. *Seymour*, 8 Conn. 311 : " It is, moreover, the settled doctrine of the Courts of Great Britain to sustain an action of assumpsit for

the price agreed to be paid for land, notwithstanding the consideration is expressly admitted to have been received by the usual clause in deeds, 'the receipt whereof is hereby admitted.' The principle is everywhere undoubted that a clause in a deed has the effect *to prevent a resulting trust in the grantor.* He is forever estopped to deny the deed *for the uses therein mentioned; and this is its only operation.*" * *

" We free ourselves from all difficulty by considering the origin and purpose of this acknowledgment, viz : *to prevent, as above expressed, a resulting trust in the grantor,* and that it is merely formal or nominal, and not designed to fix the amount, either paid or to be paid." (Ib. 312.) The doctrine that the only operation of the rule is to prevent a resulting trust in the grantor was repeated in *Meeker* v. *Meeker,* 16 Conn. 387. In that case, in a contest between the children and heirs of Meeker as to the distribution of the inheritance, parol evidence was held admissible to show that nothing was paid, where a conveyance of land by the father to one of the sons expressed a money consideration of two thousand dollars, with a view of establishing the conveyance to be a gift and intended as an advancement. Thus, it is seen, that *the purpose and scope of the rule, is, to cut off resulting trusts in favor of grantors—to estop grantors from setting up the truth for the purpose of defeating their deeds and preventing them from operating to pass a beneficial estate to their grantees.* As before remarked, the precise question now under consideration could not have arisen under the common law ; but there are some analogies which go to show that a deed, in form of bargain and sale, expressing a money consideration, may be made, by the aid of parol evidence, to operate in favor of a grantee otherwise than as a bargain and sale. A deed of bargain and sale must in fact have, or be said in the deed to have had, a valuable consideration to support it, while a covenant to stand seized to the use of a party must be founded upon a good consideration, as blood or marriage, and not a valuable one. But a deed of bargain and sale to take effect in the future is void. In *Jackson* v. *Swart,* 20 John. 86, the deed

from a father to a son purported to be in consideration of five hundred dollars, but it reserved to the grantor and his wife the use of the premises during their lives. It was contended that, as this deed expressed a money consideration, and was a deed of bargain and sale for a freehold to commence in future, it was void. But the Court, disregarding the expressed money consideration, held, that, as the grantee was a son of the grantor, the blood relationship constituted *a good* consideration, and that the deed, though void as a bargain and sale, could operate as a covenant to stand seized to the use of the grantor and his wife during their lives, and to the grantee after their death, thus changing the entire consideration and character of the conveyance, and, at least, modifying its operation. The *money* consideration was discarded, and a *good* consideration introduced. This case shows the strong leaning of the Courts in favor of giving effect, even to a void deed, according to the intent of the parties, and against defeating the conveyance. And it is on the same principle that the rule of estoppel to prevent a resulting trust in a grantor was adopted. Of this case, Chancellor Walworth, in *Bank of United States* v. *Housman*, 6 Paige, 537, says : " So in the case of *Jackson* v. *Swart*, 20 John. Rep. 85, the late Chief Justice Spencer held that a deed from a man to his sons, which purported to be founded upon a *pecuniary* consideration only, might operate as a *covenant to stand seized ;* and that a reservation of a life estate to his wife, without any other consideration except that she was described in the deed as his wife, was valid as a covenant to stand seized of the life estate for her use. In the present case the grantees are described in the deeds as the sons of the grantor. And if the deeds *cannot operate by way of bargain and sale,* they *can,* upon the doctrine of these decisions, be made effectual *as covenants to stand seized of the premises to the use of the grantees,* especially *when it is proved that this relationship formed the real consideration of the conveyances, and that the pecuniary considerations expressed therein were merely formal.*" Thus implying, at least, that *it may be proved* that " the relationship

formed the real consideration of the conveyances, and that the pecuniary considerations expressed therein were merely formal." And it is equally strongly implied from the language of the Chancellor in the same case, that the proper mode of making a gift at common law was, by deed of bargain and sale, expressing a nominal money consideration, for he says, (page 636): " I believe it cannot be doubted that a man who is perfectly free from debt can make a deed of gift to an illegitimate child, or even to a stranger, which will be valid against the claims of subsequent creditors. But *even in such a conveyance, to render it valid under the Statute of Uses, a pecuniary consideration must be inserted although none is, in fact, paid, a consideration of blood or marriage being essential to render a deed effectual as a covenant to stand seized.*" A gift, at common law, is where there is in fact no consideration, either good or valuable—where the conveyance is a mere gratuity. And for this reason the Chancellor supposes it necessary, or at least convenient and proper, to insert a consideration to estop the grantor from denying the operation of the deed and setting up a resulting trust; yet, if this be done in this State, it is insisted that the grantee may still lose the estate, because, in certain cases, under our statute; the law raises a presumption that the estate vests in a manner different from that intended by the parties and apparent on the face of the deed alone. Upon such a construction, a married woman taking Chancellor Walworth as her pilot to conduct her safely past Scylla, would be sure to fall into Charybdis.

So, also, parol evidence was admissible, even between parties and privies, in a Court of equity, at least, to show that a conveyance absolute on its face was intended to be a mortgage. The operation of the deed was not defeated by showing that no interest at all passed; but it was *controlled in such a manner as to effectuate the intentions of the parties.* And such evidence, since the change in the forms of proceedings and in the character of mortgages, is admitted at law in this State and in New York. (*Cunningham* v. *Hawkins*, 27 Cal. 603 ; 15 New York, 374.) Thus, a change in the common

law rights of the parties necessitated a change in the rules of evidence to give effect to the new rights. So, also, parol evidence is admissible to show that the consideration of a deed was paid by a stranger, and not by the grantee, for the purpose of *controlling the operation of the deed by establishing a trust in the grantee for the benefit of the party who paid the purchase money.* But I shall reserve the application of the principles deduced from common law authorities cited till after the consideration of the cases arising under the Spanish-American law bearing upon the question.

It must be confessed that the case of *Brown* v. *Cobb*, 10 Louisiana Reports, 180, upon an imperfect examination, does seem to support the view of the appellant. But the civil code of Louisiana modifies in many particulars the Spanish law as it prevailed in Mexico, and formerly in Louisiana and other Spanish-American provinces. It regulates very minutely the rights and duties of husband and wife by many provisions applicable to almost every conceivable variety of circumstances. Generally, the property may be separate or common, and the wife's separate property may be dotal and extra dotal, or paraphernal. She may manage her paraphernal property herself, or allow her husband to manage it, or they may manage it together indifferently; and, when the wife has allowed the husband to administer it, she may withdraw it from his administration. So the husband may administer his own separate property separately, or he may mingle it with the common property. But, under all these different circumstances, the rights of the parties as to the investments of the proceeds of their separate property may vary with the circumstances. It will be found by consulting the various decisions, that, under some circumstances, property purchased with separate property will still be separate; under others, that it will be common property, with a charge upon the community property in favor of the spouse whose separate funds were used for the amount due, and a tacit mortgage to secure it. (See Louisiana Code, Articles 2,305 to 2,412.) Now, if the case of *Brown* v. *Cobb* cannot be referred to some of these

provisions applicable to special circumstances—and in a later case the Court attempt to so refer it—it is inconsistent with many subsequent cases, both in Louisiana and Texas, and is therefore overruled. Article two thousand three hundred seventy-one of the Louisiana Code is as follows: "This partnership or community consists of the profits of all the effects of which the *husband has the administration and enjoyment, either of right or in fact,* of the produce of the reciprocal industry and labor of both husband and wife, and of the estates which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two, and not of both, *because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase.*"

Notwithstanding the closing paragraph, " because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase," it is clear from the decisions under that code, that it may be shown that the consideration money came from the paraphernal property of the wife, for the purpose of establishing the paraphernal character of the estate purchased. In the case of *Dominguez* v. *Lee,* 17 La. 297, this principle was upheld. The wife inherited one thousand one hundred dollars from her father, which came into the hands of her tutor. He having in some way misapplied the funds and being unable to pay it, conveyed to her a lot in satisfaction of a part of the demand, called, in the law phrase of Louisiana, " *a dation en paiement* "—a giving in payment. The husband and wife afterward mortgaged the lot to raise funds to make improvements and ameliorations upon it. In this condition it was seized on an execution against the husband. The wife obtained an injunction against a sale on the ground that it was her separate property. It is true the Judge says in the opinion, " from the stipulation in *the act of sale,* the lot so received in payment became her paraphernal property;" but it is also manifest that *other evidence* was admitted, for the

Court and the statement of the case also say : " The *evidence
shows that the plaintiff really received the lot of ground described
in her petition, in part payment of the amount due her by her
tutor*," etc., stating the facts of the case.   The Court hold the
land itself to be separate property and say : " It is true, as a
general rule, that the law considers to be common property
that which is acquired by the husband and wife during the
marriage, although the purchase be only in the name of one
of the two and not of both. (La. Code, Art. 2,371 ; 10 La.
Rep. 148.)   The reason is, in that case, the period of time
when the purchase is made is alone attended to, and not the
persons who made it.   But we are not ready to say that no
distinction ought to be made when the property *is clearly
shown to have been bought with the separate funds of one of the
parties, and particularly with funds of the wife which never
came under the administration of the husband.* (1 La. Rep.
523.)   *It is a well settled doctrine in our jurisprudence that
money received during the marriage, even by the husband on
account of his wife, does not fall into the community but remains
her separate property.* (7 Ib. 292.)   According to Article
2,361 of the Louisiana Code the wife has the right to admin-
ister personally her paraphernal property without the assist-
ance of her husband ; and by the Article 2,315, paraphernal
is considered as the separate property of the wife.   There
necessarily results from these provisions of the law a power
allowed to the wife to administer alone her paraphernal estate
as she pleases, and a right *to alienate her separate property and
to invest her paraphernal funds in whatever manner she thinks
proper and most advantageous to her interest,* provided she does
it with the authorization of her husband.   She may even
resume the administration of her extra-dotal property, previ-
ously confided to her husband, and also demand restitution of
what is the object or price of it whenever she chooses." (La.
Code, Art. 2,368 ; [8 Martin N. S. 228,] p. 299.)   Some of
the distinctions before suggested, arising from allowing her
husband to administer the separate estate, are then alluded to
by the Judge.   The lot is held to be separate property, but

the improvements made by funds not coming from the separate estate of the wife were held to be subject to sale.    The
case of *Comeau* v. *Fontenot*, 19 La. 406, goes upon one of the
distinctions before alluded to—and the opinion in this case
shows that *Brown* v. *Cobb* goes upon the same distinction, for
the Court on this ground distinguishes them from *Dominguez*
v. *Lee*.    The suit is for a separation of property, and the question was, whether a slave, Rose, and her children were the
separate property of the wife or community property.    The
*husband had the administration of all the property*, and had
previously sold one of the children.    The slave, Rose, had
been conveyed *to him by notarial act* by the plaintiff's mother,
*without the consent of the wife*, but the consideration was seven
hundred and fifty dollars, due the wife as a part of her inheritance.    The Court say : " We cannot distinguish this case
from that reported in the 10th La. Rep. 180, in which we
held that property purchased during the marriage, by the
husband and in his name, though bought with the funds of
the wife, belongs to the community.    In *Dominguez* v. *Lee*,
17 La. Rep. 295, we ruled, it is true, that property acquired by
the wife by a *dation en paiement*, made to her by her tutor, and
which never came under the husband's administration, still
constitutes her separate or paraphernal property.    The two
cases are quite distinct.    In the one the husband, employing
a fund belonging to the wife, in the purchase of property in
his own name, *without her consent*, becomes the owner as head
of the community, and owes to his wife the amount thus
employed.    In the other, the wife, who has retained the
administration of her paraphernal property, employs it herself
in the acquisition of other property, with his consent, or
receives a *dation en paiement* from her own debtor."    The
Court, in addition to the fact of the administration by the
husband, seems to attach some weight to the fact that the
purchase was *without the wife's consent*, and that it might be
more to her interest in such case to hold the slave to belong
to the community, with a charge against it in her favor for
its value.    For it is said : " Suppose the slave, Rose, pur-

chased with the funds inherited by the wife, instead of becoming the mother of several children, had died. According to the argument of the plaintiff, this loss would have fallen upon her, although the purchase had been made, without her consent, by her husband, who had taken upon himself and was responsible for the administration of her paraphernal estate," (p. 408.)

If the two cases of *Brown* v. *Cobb* and *Comeau* v. *Fontenot* do not depend upon the modifications made by the Louisiana code, subsequent cases clearly overrule them.

The case of *Terrell* v. *Cutrer*, 1 Rob. 367, it seems to me, squarely overrules *Brown* v. *Cobb*. The question whether parol evidence is admissible to show that the purchase'money of a slave conveyed by deed was paid out of the separate property of the wife, with a view of *controlling the operation of the deed in her favor*, was made and directly decided in the affirmative. The plaintiff, a married woman, claimed as her separate property two slaves, which her husband had turned out to his creditors. The slaves had been purchased by the wife with funds in the hands of her husband derived from the estate of the wife's father. It was claimed that in order to prevent the property purchased from becoming a part of the community, it must be declared on the part of the wife, " *by notarial act*," that is, in the instrument of conveyance (or what answers to our conveyance,) itself, that she purchases for her sole account, and from what source she obtained the money given in payment. The Court say : " On the trial *it was objected that parol evidence was inadmissible to prove that the slaves were purchased with paraphernal funds; and the defendant took a bill of exceptions to its admission, notwithstanding his objections. It was objected to on the ground that such proof was against and beyond what was contained in the written contract, and could not be introduced* without showing that the wife was in the actual administration of her paraphernal property. *The Court, in our opinion, did not err in admitting the evidence. It does not appear to us that the evidence that the*

5

*price stated to have been paid was in fact paid out of the proper funds of the wife, is repugnant to the deed itself;* and as the wife has at any time the right of resuming the administration of her paraphernal property, and it belongs legally to her, we see no necessity for proving that she had the actual administration at the time that she appropriated a part of it to the purchase of the slaves, with her husband's consent. That act alone was one of administration and was done with the consent of the husband. The bare receipt of the money by her husband does not alone show that she had confided to him the administration. On the contrary a part of it was employed by her agent in Kentucky, under her orders, and was invested in the purchase of one of the slaves in dispute. If the slaves had died, and the wife had claimed of the syndic, as a debt due her, the amount derived from her father's estate, we think under all the circumstances of this case that she could not have recovered; because the investment of the amount by her, even during the marriage, would be considered as a valid contract. *It is difficult to find any real distinction between this case and that of Dominguez v. Lee,* 17 La. 300. In that case we held, that when the wife retains the administration of her paraphernal estate, and the title is taken in her name, either as a purchase with the funds which she administers without the assistance of her husband, or as a *dation en paiement* made to her by a debtor of a separate and paraphernal claim, the property thus acquired remains paraphernal and does not fall into the community of *acquets* and *gains*. We readily admit that the subject is not free from difficulties, growing out of the very general dispositions of the law applicable to such cases. The wife's right to sell or otherwise alienate, and to administer her paraphernal property, is clear. Her right to reinvest the proceeds of her property thus disposed of would seem to be but a corrollary from that principle. It would perhaps be a safe and proper precaution to require that such contracts should be by *authentic act, as contended for by the defendant's counsel; but we are not aware that any law requires it, and we have never recognized its necessity to their validity,"*

(p. 368.)  The same principle is implied and recognized, and *Terrell* v. *Cutrer* cited as settling the law upon this point in *Marshall* v. *Mullen*, 3 Rob. 328.  The wife claimed a lot purchased during the existence of the community of *acquets*, but conveyed to the wife.  On the trial " it was attempted to be proved that it had been paid for with paraphernal funds ; but the Judge thought that allegation not sufficiently established."  On appeal the Court say : " We can find no evidence to satisfy us that the lot was paid for out of the paraphernal funds of the wife.  The deed of sale does not show it with any certainty, *and there is no other evidence to prove it.  *  *  *  As the case now stands, all the principles involved in it have been settled in the cases of *Terrell* v. *Cutrer* and *Bertie* v. *Walker*, 1 Rob. 367, 431." *Terrell* v. *Cutrer* was again sanctioned in *Rousse* v. *Wheeler*, 4 Rob. 118.  The idea would seem, from this and some other cases, to be, that when the wife allows her husband to administer her paraphernal estate, and to sell, invest and reinvest the proceeds of the property purchased, it becomes common upon the principle of the implied assent of the wife that it should be so ; and that in such cases there is a charge and mortgage upon the husband's estate to the amount thus appropriated in favor of the paraphernal property of the wife.

The principle of these cases was again affirmed in *Broussant* v. *Her Husband et al.*, 11 Lou. An. 446.  The slave in question had been sold to the wife, with the consent of her husband, for the price of five hundred and forty dollars, *as expressed in the act of sale.*  There was some question as to the sufficiency of the proof to identify the source whence the purchase money was derived, and the Court thought the circumstances required " that the case should be remanded for a new trial, and to enable the parties to furnish *any further evidence in their power*."  Of course it must have been evidence *dehors* " the act of sale "—the conveyance.  And the same principle was again sanctioned in *Gonor* v. *Her Husband*, 11 Rob. 572.  But this case is more nearly on all fours upon the precise point in question with the case now

under consideration, and I shall reserve further comment till
I come to the exact point. Again, in *Metcalf* v. *Clark*, 8 La.
An. 287, the Court approve the foregoing cases, and answer
satisfactorily, it seems to me, the suggestions relating to the
liability of purchasers to be misled to their injury by the
*apparent record title*, and the further suggestion as to the
necessity of reciting all the facts in the conveyance—on these
points fully sustaining the principle determined in *Ramsdell*
v. *Fuller*, 28 Cal. 37. The Court say, (p. 287) : "But it is
urged that the investment of the paraphernal funds *should be
expressed in the Act* by which the wife acquires the property.
*The objection does not appear to us to be founded in law. In
regard to creditors, such a statement would of itself be without
effect, except in giving notice to third persons. But as the hus-
band is the head and master of the community, having alone the
administration, a purchase in the name of the wife would not be
in the usual course of business, and consequently would be suffi-
cient to put third persons upon inquiry.* As this rule seems to
be applicable to promissory notes signed by the wife, we see
no reason why it should not be equally applicable to other
contracts entered into by her. *The wife, if required, would be
bound in all cases to establish the reality of the sale to her dehors
the act; and the same proof would also be necessary in order to
make her acknowledgment in the act binding upon her.*" Thus,
in Louisiana, even though the conveyance—the act of sale—
should upon its face expressly state that the land is conveyed
to the wife to her separate use, and was paid for out of her
separate estate and every fact necessary to show that it was
intended to vest a separate estate, yet, in a contest with the
husband, or anybody claiming under him, the presumption of
law would seem to be, that the deed operated to convey an
estate in common, subject to the absolute disposal of the hus-
band, and " the wife, if required, would be bound in all cases
to establish the reality of the sale to her *dehors* the act ;" that
is to say, give other evidence *dehors* the deed to control its
operation, for it is claimed that the apparent operation of the
deed is in law its real operation. To the same effect, as to

this burden thrown upon the wife, is *Forbes* v. *Forbes*, 11 La. An. 326, *Clark* v. *Norwood*, 12 La. An. 598. But to what end is this evidence to be introduced unless, when it has been received, *it shall control the operation of the deed in accordance with the real facts of the case, against the operation which the law says it shall have upon the face of the instrument itself ?*

We will now consider the cases in Texas, where, it is understood, there have been less modifications of the Spanish law in respect to marital rights, as it prevailed in Mexico, Louisiana, Texas and California, than was made by the Louisiana Code. In *Love* v. *Robertson*, 7 Texas, 8, the contest was about two slaves between the widow, who claimed them to be common property, and the heir, who claimed them to be the separate property of the husband, his father. The purchase money of one and part of that of the other was paid out of funds, the proceeds of sales of property inherited by the husband, and the balance for the latter out of the common property. The Court cite the Spanish law and some of the Louisiana cases above cited, and say (p. 10) : "From these cases it seems clear that property purchased with the separate or individual money of either husband or wife does not necessarily belong to the community. * * * Accordingly, in *McIntyre* v. *Chappell*, we held that negroes received by the husband during the marriage, in discharge of a debt due him for property which he had sold previous to the marriage, were his separate property. It is difficult to perceive any real distinction between this case and that. In the case of a purchase made during the marriage, it will in general be more difficult to prove the individual ownership of the money, from what source it was derived, and whose money was really employed in making the acquisition, than in the case of the mere exchange of one article for another. A greater burden of proof will devolve on the claimant. The presumption that property purchased during the marriage was community property, would certainly be very cogent, and would require to be repelled by clear and conclusive proof. But when it is

established, as in this case, clearly and conclusively, that the property was purchased with the separate money of one of the parties, no reason is perceived why it should have a destination different from that of property received in payment of a debt due the party, or why it should not remain, in the one case as well as in the other, the separate property of the party with whose money it was purchased. Why should not the property purchased with the proceeds of the patrimony receive the same direction as property received in lieu of those proceeds?" The Court held one of the slaves, and a *pro rata* interest in the other, to be separate property. There was no question of admissibility of evidence in this case made or argued, it is true; but *it was assumed that the real facts might be proved.*

In *Huston* v. *Curl*, 8 Texas, 240, the contest was between the wife, who claimed a slave as her separate property, and creditors of the husband. There was a bill of sale in the name of the wife, and evidence *dehors* the instrument upon the question as to who furnished the consideration. The Court say (page 242) " It is the settled doctrine and law that property purchased during the marriage, whether the conveyance be made to the husband or wife separately, or to them jointly, is presumed to belong to the community. This presumption may be rebutted by clear and satisfactory proof that the purchase was made with the separate funds of either husband or wife, in which case it remains the separate property of the party whose money was employed in the acquisition. (*Scott & Solomon* v. *Mangard et ux.*, Dallam, 548; *McIntyre* v. *Chappell*, 4 Texas, 187; *Love and Wife* v. *Robertson*, 7 Texas.)" So in *Ross* v. *Houston*, 11 Texas, 326, the Court say: " The consequence is that to maintain the character of separate property it is not necessary that the property of either husband or wife should be preserved in specie or kind. *It may undergo mutations and changes, and still remain separate property; and as long as it can be clearly and indisputably traced and identified, its distinctive character will remain.*" See, also, *Parker* v. *Chance*, where the Mexican law is cited

to the same effect.   (Ib. 516.)   Of course to trace the prop-
erty through its "mutations and changes" in such a manner
as to sustain the interests of the wife, requires evidence other
than written, and even against it.   In *Chapman* v. *Allen*, 15
Texas, 283, where the bill of sale purported "*to be in consid-
eration of valuable services rendered by the claimant, and one
dollar in hand paid,*" the right to show by parol testimony
that the consideration was really received from the inheritance
of the wife was recognized, although not necessarily decided.
The case of *Smith* v. *Strahan*, 16 Texas, 315, is another illus-
tration of the great freedom of inquiry into the real facts of
the case allowable in transactions relating to marital rights
under a system entirely similar to ours.   The suit was by the
heirs of the wife against the surviving husband for a partition
of four hundred acres of land *conveyed to the wife during her
coverture for a money consideration—the money having been
furnished by the husband out of his separate property, and the
conveyance having been made to the wife by direction of the
husband.*   The heirs claimed the land as separate property of
the wife, and the husband claimed it as·his separate property.
*Parol testimony was introduced* to show that in paying for the
land out of his separate property and taking the title in the
name of his wife, the husband did not intend it as a gift to
the wife, and there was a resulting trust in his favor.   It was
held, in a well reasoned opinion, that when a husband pur-
chases land with funds belonging to his separate estate and
takes the deed in the name of his wife, the presumption of
law is that he intends it as a provision for the wife, and that
the title vests as a separate estate in the wife.   *But it was
further held that this presumption might be rebutted by parol
evidence.*   No such presumption, however, arises when he
pays for the land out of the common property, for in that case
the law determines the operation of the deed.   It having been
contended that the wife could not be a trustee for the hus-
band, the Court say, (p. 321) : " This principle has little or no
force under our system of laws and of marital rights.   The
right of the wife, under our laws, to hold property is coequal

with that of the husband, and upon evidence it may be shown that property in the name of one is really held for the benefit of the other. It is very true that the wife is under the burden, or, as the law intends, under the protection, of some legal disabilities, even with reference to her separate property ; but these have reference to the mode of alienation, and not to any claim of the husband over such property, *jure uxoris*, for he has none except that of management and its incidents. At all events, where the fundamental principle of the marital relation is that whatever may be the unity of persons, there is no unity of estates, there can be no such rule as that the wife cannot be a trustee for the husband in any sense which *would preclude evidence, showing that although property is in her name, it was intended for the benefit of the husband.*" Again, as to the effect of the deed, (Ib. 232) : " *The legal effect and operation of the deed is to vest the property in the wife.* This effect would be rebutted in case a stranger were the nominee in the purchase. But the wife is not as a stranger to the husband. She has distinct rights and a separate estate, but he is bound for her support and maintenance, not only by law, but from impulses of affection ; and a conveyance to her, when the purchase money is advanced by himself, is not to be presumed *prima facie* an arrangement for his convenience, but as imparting to the wife a substantial benefit, and vesting in her the whole interest as well legal as beneficial. *This is but a presumption, and may be rebutted by evidence ;* but the wife and her privies are entitled to the benefit of this presumption, and the Court erred in refusing to instruct the jury that such was the inference of the law." And further, as to the distinction between the community and separate property, (Ib. 323) : " The intention of the husband, in taking the conveyance of community property in the name of his wife, has no effect upon either his own, or the rights of his wife. The law prescribes the operation of such deed, irrespective of the motives in taking it in either the name of the husband or of the wife, or of both jointly ; for, whether taken in the one form or the other, the community character of the property is

not changed. But there is no such rule in reference to their separate estates, and it could not be applied to them, without producing much embarrassment and confusion. The law having attached no uniform operation to a purchase by a husband, out of his separate funds, in the name of the wife, *the question of intention of the husband, in so taking the deed, becomes of paramount importance, for upon that depends its operation.* The inference of law is, that by such act he intended an advancement, or provision for the wife." *We have then in the case cited this condition of things: A conveyance of land to the wife upon a money consideration, and the operation of the deed under the law when read by its own light alone, is, to vest the title in the community subject to the control and absolute disposition of the husband. But parol evidence is admissible, and admitted, to show that the consideration money was paid by the husband out of his separate property and the deed by his direction taken in the name of the wife, and by this parol evidence the effect and operation of the deed is changed and the title transmitted in another direction, for, now, in the language of the Court, " the legal effect and operation of the deed is to vest the property in the wife." But again, further parol testimony is admissible to show, that, in fact, it was not the intention of the husband to make a provision for the wife out of his separate estate, and the legal effect and operation of the deed is again varied and the property transmitted in a third direction and becomes the separate property of the husband.*

In *Claiborne* v. *Tanner*, 18 Tex. 70, a deed of land to a married woman was " for the consideration of two thousand two hundred dollars expressed therein." Testimony was introduced showing that the consideration really paid consisted of a negro, received by the wife from her father, and a yoke of oxen, and the Supreme Court recognized the right of the wife to an interest in the land as separate property in proportion to the value of the consideration thus furnished by her. Thus, I think, it is shown by an unbroken line of decisions in Louisiana and Texas, with the exception, perhaps,

of two or three early cases in Louisiana—and those cases seem to depend upon modifications of the Spanish laws made by the code of that State, and can scarcely be called exceptions—that parol testimony may be introduced to·show that the money consideration expressed in a conveyance to a married woman came from her separate property with a view of controlling the operation of the deed, and giving it an effect different from that which the law says it shall have, if construed by the language of the instrument itself. In several of the cases the question was directly made and determined, and in all it was assumed that such evidence is admissible, and in Texas, at least, the unvarying practice of the Courts, from the foundation of the State Government down to the last volume of its reports received here, has been to admit it. The same principle is strongly implied from the course of the argument and the tenor of the quotations in this State, in the case of *Meyer* v. *Kinzer*, 12 Cal. 247, in which many of the Louisiana and Texas cases were cited. The statement that the wife must show by clear evidence that the land conveyed to her was purchased with her separate funds, in order to rebut the presumption raised by the law that it belongs to the community, necessarily assumes *that she may make the proof.* The same implication runs through many other cases in the California Courts, down to *Ramsdell* v. *Fuller*, in which case the question was necessarily involved. It is true the question was not raised on objection to evidence. But it makes no difference, for, when the facts are shown, and it appears that the matter by which it is sought to control the operation of the deed is *dehors* the deed, effect cannot properly be given to it, if it is for that reason irrelevant and inadmissible. If it is proper to give effect to any matter when proved, which it appears must have been proved by parol or not at.all, it must be proper to prove it.

In many of the States where the· common law prevails recent statutory provisions have been made, authorizing married women to hold, as their separate property, such property as they had before marriage, and such as may come to them

after marriage by gift, bequest or devise. In Pennsylvania the Act of 1848 provides that " every species and description of property, whether consisting of real, personal or mixed, which may be owned by or belong to any single woman, shall continue to be the property of such woman as fully after her marriage as before ; and all such property, of whatever name or kind, which shall accrue to any married woman during coverture, by will, descent, *deed of conveyance or otherwise,* shall be owned and enjoyed by such married woman as her own separate property," etc. This statute is much broader in its terms than our own constitutional or statutory provision ; for, in addition to will and descent, it says " *deed of conveyance or otherwise.*" Many contests have already arisen under it, sometimes between the wife. and administrators of the husband, but more frequently the wife and creditors of the husband. But it is there invariably held in such cases, that, notwithstanding the conveyance is to the wife, she must show *dehors* the deed that the purchase money was paid out of her separate property. The burden of proof is on her. It is held that the presumption of law arising from a conveyance made during coverture is, that the money paid belongs to the husband, and the property is therefore his, and the wife must rebut this presumption. (*Gamber* v. *Gamber*, 18 Pa. St. R. 366 ; *Keeney* v. *Good*, 21 Ib. 355 ; *Winter* v. *Walter*, 37 Ib. 155 ; 38 Ib. 277 ; 44 Ib. 193, 307 ; 47 Ib. 227.) A similar construction is put upon a similar law in Wisconsin : " When property is claimed by a married woman under the Act of 1850 she must show either that she owned it at the time of the marriage, or else acquired it afterward by gift, bequest or *purchase ; and if she claim it by purchase the onus rests upon her to show that she paid for it with funds which were not furnished by the husband.*" (*Stanton* v. *Kink*, 6 Wis. 338.)

So also in Maine, under the statute of 1844. (*Clark* v. *Viles*, 32 Maine, 32 ; *Eldredge* v. *Preble*, 34 Maine, 148.) But this harsh construction, which often throws an almost insuperable obstacle in the way of the enforcement of the rights of married women, and, in many instances, doubtless, would

effectually nullify the benign provisions of the Act, was obviated and the *onus probandi* cast upon the other party by the Act of 1847. (*Winslow* v. *Gilbreth*, 50 Maine, 93.) If the wife *must make the proof* necessary to control the operation of the deed in her favor in all these cases, it would seem to follow, as a matter of course, *that she may do it.* And that proof must necessarily be *dehors* the deed, and to a great extent rest in parol. It is no answer to say that the wife must preserve the evidence in the recitals and covenants of her deed, for such recitals and covenants, under our Constitution and law, would not be conclusive, if, indeed, *prima facie* evidence in her favor. " *The legal presumption is that the slaves bought by the plaintiff pending the community of acquets is community property. The unsupported declaration in the act of sale that the purchase money was given to her by her father cannot conclude the appellants, who were strangers to the act.*" (*Forbes* v. *Forbes*, 11 La. An. 326.) " But, it is urged, that the investment of the paraphernal funds should be expressed in the act by which the wife acquires the property. The objection does not appear to us to be founded in law. In regard to creditors, *such a statement would of itself be without effect, except in giving notice to third persons.* * * * *The wife, if required, would be bound in all cases to establish the reality of the sale to her dehors the act ; and the same proof would also be necessary in order to make her acknowledgment in the act binding upon her.*" (*Metcalf* v. *Clark,* 8 La. An. 287.) The most that can be said of a conveyance expressed to be in consideration of love or affection, or to be an absolute gift without consideration, is, that it would make a *prima facie* case in favor of the wife, and shift the burden of proof of the real facts upon the husband, or party claiming through him. And it is not perfectly clear that there is any sound reason for making this distinction between conveyances to the wife expressed to be gifts, and those with an expressed money consideration. For the first presumption of the law always is, that the grantee named is the real grantee, and the wife is as competent to take on a money consideration coming from

her separate property as by gift. The fact that the grantee
is a husband or wife is another fact from which the first pre-
sumption is set aside, and another presumption raised that the
community is the real grantee, and it makes no difference
whether this fact appears in or *dehors* the deed, for when
ascertained the same presumption arises in either case. The
only difference is, that, in the first case, one more of the con-
trolling facts appears in the deed. And, doubtless, the recital
that a party is the wife of some party named might be contra-
dicted, if not true. The husband has the management and
absolute power of disposition over the common property, and
in fact usually exercises it, and it is entirely out of the ordi-
nary course of business to take the title to the common prop-
erty in the name of the wife. A conveyance really for a
money consideration coming from the common fund may, for
all the purposes of fraud, as well be expressed to be a gift, as
on a money consideration. Besides, the contest must always
be between the wife and the husband, or between parties
claiming under, and standing in privity with them ; and, *for
the purposes of such contests, the husband and those claiming
through him are strangers to the deed, and the recitals and
covenants in favor of the wife are not conclusive against them.*
What sound reason, then, is there for the distinction requiring
the husband and claimants under him to shoulder the burden
of proof in the one case, and the wife in the other, when the
husband or claimants under him are concluded by neither ?
Applying the same rule as to the burden of proof to both,
either form of conveyance would afford equal facilities for
practicing frauds upon others, while upon applying the rule
that a conveyance to the wife expressed to be a gift makes a
*prima facie* case in favor of the separate property of the wife,
the facilities for perpetrating frauds and the dangers of so
doing are in this form vastly increased. The rights of the
wife in California, as against her husband, do not depend upon
her contract, or the recitals and covenants therein contained,
but upon the law applied to the facts as they really exist.
Section two of the Act defining the rights of husband and

wife says: "All property acquired after the marriage by either husband or wife, except such as may be acquired by gift, bequest, devise or descent, shall be common property." Under the settled construction of this provision in California, Louisiana and Texas, when it appears that the grantee is a married woman and the conveyance is upon a money consideration, the presumption at once arises that the property is common, no matter what the terms of the deed may be. And from this very fact the necessity of evidence *dehors* the instrument arises; not between grantor and the nominal grantee, for, except when the husband himself is the donor, the contest never arises between them, or their privies, *but between the nominal grantees and the parties who, upon the face of the deed, are strangers.*

Nor is there any greater force in the proposition that the wife should have her property conveyed to trustees with the necessary limitations, as at common law. Both the Constitution and the statute make her capable of taking in her own name. She is just as competent to take lands or other property in her own right as her husband. The husband and wife in this respect are not one person. The common law merger of the wife in the husband is to this extent, at least, abrogated, and they are as much two distinct legal entities as any two men. (*Smith* v. *Strahan,* 16 Tex. 321.) She not only has the capacity to take, but she has the constitutional right to take, hold and enjoy in her own name, without the intervention of trustees, and without the cumbersome machinery incident to that relation. The Constitution says: "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise or descent, shall be her separate property. (Art. XI, Section 14.) And the rights of the wife upon the state of facts indicated cannot be abrogated by legislative action. Her rights depend upon the facts and the constitutional provision, and not upon the terms of the deed. Section one of the Act defining the rights of husband and wife is in the same language. There is nothing here requiring a woman

in contemplation of marriage to convey her property to trustees to enable her to enjoy it. When, after marriage, she sells her separate property, and invests in some other kind of property, it is only changing its form, and substantially not a new acquisition. If she has a right to take and hold separate property, and to change its form, she must be entitled to trace it through its mutations by evidence.

But it may be said that the position thus far taken and sustained by the numerous decisions cited from Louisiana and Texas may be admitted; that they are cases where the money consideration expressed has been, or may be, shown to come from a particular source; that the facts shown are not inconsistent with the recitals of the deed, and that the question is not precisely the same as that in the case at bar, where there was an expressed money consideration, and the offer was, not to show that it came from the separate property of the wife, but to show that there was no money consideration at all. I do not, however, perceive that there is any difference in the principle applicable to the cases. But however this may be, the decisions commented upon illustrate the subject of marital rights as they exist under our Constitution and laws, and the principles of evidence applicable to the subject. They also seem to me to involve the same principle, and to bear distinctly upon the real questions at issue. But I shall now cite some further authorities, which appear to me to determine the precise question, and endeavor to show that it is substantially identical with that in the cases already discussed.

The case of *Conception Marianna Gonor* v. *Simon Gonor*, her husband (11 Rob. 526), was a suit for separation of property, founded upon the disorder of the affairs of her husband. The creditors of the husband intervened. The plaintiff, among other things, claimed a slave, Adelaide, and her increase, as her separate property. She alleged, "that said slave was conveyed to her in November, 1811, by *act* before Pedesclaux, a Notary, by her mother; that, although the consideration or price *mentioned in the act was two hundred dollars*, the estimated value of the girl, then aged only twelve

years, yet the same *was an advance made to her by her mother*, and that therefore the slaves are her own separate paraphernal property," (p. 526.) "On the trial the plaintiff gave in evidence, *a copy of the act of sale*, passed before Pedesclaux, from her mother, the widow Vienne, to herself, and accepted by her husband, in which the vendor acknowledges to have received two hundred dollars, the price, from the present plaintiff. *Her counsel then offered in evidence the deposition of certain witnesses, taken under commission, to prove that the said sale, purporting to be for the price of two hundred dollars, previously paid by the purchaser, was in fact a* dation en paiement, *and that the slave was given to the plaintiff by her mother as an advance upon her inheritance.* The intervenors objected, on the ground *that parol evidence is inadmissible to vary the nature of the written contract, or to show that the contract was not a sale, as upon its face it purports to be ;* but the Judge presiding admitted the evidence to prove that the slave was acquired with the funds of the wife, and a bill of exceptions was taken," (p. 527.)

On appeal the question was as to the admissibility of the parol evidence, and the Court, after disposing of "the increase," say, (p. 528) : "It only remains then to inquire whether Adelaide became, by the purchase, the sole property of the plaintiff or that of the community. *The sale is in her name, and the vendor acknowledges that she paid the consideration.*" After citing with approbation some of the cases before referred to in this opinion upon the question of introducing parol evidence to show the origin of the consideration, the Court say (p. 528) : "*The case now before the Court comes within the spirit of the exception, as existing under the Spanish law, as well as the code of* 1825. *The act acknowledges that the plaintiff had paid the price. The parol evidence, which was properly admitted* (under the restriction expressed by the Judge), *because it does not contradict the act in this respect, shows that Mrs. Vienne, the mother, made to each of her children a similar advance.* It does not appear ever to have been under the control of the

husband; and there is no circumstance which creates the slightest suspicion as to the fairness of the transaction."

The case is as nearly identical with the one now before the Court as we could well expect to find one. The conveyance was by a mother to her daughter by notarial act, expressing a money consideration equal to the full value of the slave at the time. Yet there was in fact no money paid. It was simply an advance, or in other words, it was substantially a gift in consideration of love and affection, to be taken into consideration, it is true, in distributing the estate of the mother after her death, but nevertheless a gift. "The mother made to each of her children a similar advance," (p. 529.) Parol testimony was offered to contradict the expressed consideration of the deed, and was objected to by the creditors of the husband " on the ground that parol evidence is inadmissible to vary the nature of the written contract, or to show that the contract was not a sale, as upon its face it purported to be." The evidence was admitted, and on appeal held to be properly admitted. The Court regard the principle as identical with that established by the cases before cited in this opinion. In the case at bar, the conveyance is from a mother to each of her eight children, conveying to each an undivided ninth of the lands described, she retaining the remaining ninth for herself. She sets out by naming the grantees as her children, then recites the granting of the land to her by the Mexican Government, then proceeds: " These are, therefore, to acknowledge that my before mentioned children have each an interest of one undivided ninth part of each of said ranchos, both of which are embraced in the last mentioned grant, and are entitled, under each of said grants, to the enjoyment of the same in common with me. And this indenture further witnesseth, that in order to secure fully to my said children the aforesaid interest in the above mentioned grants, I, the said Martina Castro, for and in consideration of the natural love and affection which I have and bear to my said children, and for the further sum of five dollars to me in

hand paid, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold and conveyed," etc. This case is, if there is any difference, stronger than that of *Gonor* v. *Her Husband*, for it shows upon its face an intent to make a gift or advancement. The mother even seems to have had an idea that they were entitled to the interest conveyed, perhaps having in view the principles of the Mexican law, that the estate must come to them after her decease. But, at all events, her children seem to have been treated alike, and the parol evidence introduced tended to show substantially what was shown in *Gonor* v. *Gonor*—a gift or advance, a division of the property of the grantor among her children before her death, and not a sale for a money consideration; and this would also be clearly consistent with the intent manifested on the face of the deed, for at the worst the intent is as clearly manifested to convey on a consideration of love and affection as for the sum of five dollars, and when different considerations are expressed I can perceive no more propriety in holding the money consideration conclusive than the consideration of love and affection. But, at least, according to several of the cases already cited, when a part of the consideration is such that the property purchased would be separate property, and a part common property, the property purchased should be divided pro rata, and in that view it might be necessary to show the exact amount of the money consideration paid.

In *Higgins* v. *Johnson*, 20 Texas, 393, the contest was between the heirs of Mrs. Johnson, the wife of Chauncey Johnson, and the grantees and creditors of the husband. The husband bought a land certificate with funds of the community, and had it assigned to the wife. Thereupon a patent was issued for one third of a league of land, by the State of Texas to the wife, as assignee of Daniel Winchel. "There was a bill of exceptions, showing that the defendants (the heirs of the mother) offered to prove, by witness J. S. Johnson, that Chauncey Johnson gave the land in controversy to his

wife Emily Johnson, to which plaintiff excepted." The Supreme Court say: "But one question is presented in this case, viz: was the land in controversy a portion of the community estate of Chauncey Johnson, or was it the separate property of Emily, his wife? The certificate was conveyed and the patent issued to his wife; but the purchase being made by the husband with community funds, and it being the *prima facie* presumption that a purchase, though in the name of the wife, is a portion of the common property, *the question is whether the declarations of the husband, at the time of the purchase, are such as to repel this presumption, and amount to a gift to the wife.* * * * *The legal effect of deeds, as a general rule, is to vest the property in the grantee. And when this effect, is varied by parol evidence—when it is shown that the deed is not the true expression of the intention of the parties, and that this may be inferred from circumstances outside of the deed—the intention is a fact to be established by proof; and presumptions of such intention not being conclusive, may, on general principles, be rebutted by evidence to the contrary.* * * * There is no doubt that where a purchase is made with community funds, a mere direction by the husband to the vendor to execute the conveyance to the wife will not operate a change of estate, or convert community into the wife's separate property. The acquisitions of the joint or separate labor or industry of the partners become common property; and as a general rule, deducible from our former laws, property purchased during the marriage, whether the conveyance be in the name of the husband or the wife, or in the names of both, is *prima facie* presumed to belong to the community. This, however, is but a presumption, and may be rebutted by proof that the separate funds of either partner were employed in making the purchase; and if so, the property belongs to the one whose funds were employed in the acquisition; and provided also that the husband, in purchasing with his own means, takes the deed in his own name; for if this be in the name of the wife, the presumption will be that the property was intended for her and not for himself. It will be perceived that a wide

door is open for the admission of parol evidence to explain and
modify deeds taken under this system during marriage. *In
fact, a deed of purchase taken in the name of the husband or of
the wife, has a twofold aspect or character. It may be a convey-
ance of separate, or it may be a conveyance of common property,
though as a general rule the purchase belongs to the community;*
and therefore arises the presumption that though the deed,
upon its face, conveys a separate right to the husband or wife,
yet the conveyance is, in fact, for the benefit of the commu-
nity. The presumption that the deed to the husband is a
conveyance to the community is, under ordinary circumstances,
much more strong than when the deed is to the wife. The
husband has the active dominion and control over the common
property. He can alienate, exchange or dispose of it, without
the consent of his partner in matrimony; and his acts, if not
done with a fraudulent intent to her injury, will be good. He
sells and purchases in his own name. Conveyances are rarely
taken by the husband in the joint name of himself and wife,
or in her name alone; and therefore when made in the name
of the wife, by the direction of the husband, the presumption
that the property belongs to the common gains has not the
force attached to it when arising upon a deed to the husband,
in his own name. A deed to the wife is ordinarily but a deed
to the community; yet, as she may possess separate property,
a conveyance of such property must be to her and in her own
name. We have seen that a mere direction by the husband,
when purchasing with common funds, to convey to the wife,
would not vest in her any separate interest. But in this case
there was more than a mere order to convey to the wife. *The
evidence showed to the satisfaction of the jury, and we think
pretty clearly, that the husband intended to make her a gift of
the certificate.* He was apprehensive of trouble from old debts
in New York; and, as he said, he wanted his wife to have
something for the benefit of the family, and therefore the
assignment to her of the certificate and not to himself. If the
purchase had been with his own money, the conveyance to
the wife would of itself have been presumptive evidence of a

gift.  If made with community funds, will not the deed, under the direction of the husband and with the *avowed intention of a gift, operate in the same way to convey the property to her in her separate right ?    Is not, in both cases, the only question that of the intention of the husband ?*    In the former, the law *prima facie* presumes the intent to favor the wife ; in the latter, the *prima facie* presumption is for the community.    *But this is rebutted by the express declarations of intention by the husband to make provision for the wife ; and it is manifest that to secure this object he took the deed in her separate name.*    Is there anything in the fact that this was community property which would disable the husband from converting it by donation into the separate property of his partner in marriage ?    He had the control and disposition of the common property.    He could sell without 'the consent of his conjugal partner, and could doubtless, as under our former laws, make such moderate donations to strangers as would not operate a fraud upon the wife.    She has also dominion in the property, but during the life of the husband it is not *in actu* but *in habitu.*    It is passive.    A husband vested with such enlarged control, even to the power of donation in a limited degree to strangers, has certainly authority to transfer the whole interest in an article of community property to the wife as her separate, exclusive estate, she having already a passive though undoubted right to a moiety of the property.    *    *    *    The debts which are pressing the property were contracted long after the donation to the wife, and those creditors cannot set up that the conveyance was in fraud of their rights.    It is not without some hesitation that the Court has attained the conclusion which it has reached in this case.    We cannot be insensible to the fact that the admission of parol evidence to establish the intention of gift by the husband must offer facilities and temptations to fraud and perjury.    This has been lamented by Judges and Courts ; but such evidence has always been admitted in equity to enforce resulting trusts, and provisions for wives and children, which are exceptions to such trusts ; and in this State such evidence is also admissible to establish parol trusts,

as these are not prohibited by law; and in addition to these we must, under our system of marital property, resort to such evidence frequently to ascertain whether conveyances vest the property in the community or in the partner named in such conveyances. *On principle it is not perceived why parol evidence may not be invoked to show the intention of the husband in having the deed of purchase with the common funds made to the wife; and if he intended a donation, why his intention should not have effect in the same way, and to the extent that his intention would be enforced provided the purchase had been made with his own funds;* and particularly in a case where by the donation only a very moderate provision is secured to the wife."

This case also seems to determine the precise question. The bill of exceptions presents two questions. Firstly—*Is parol evidence admissible to show that a conveyance upon an expressed money consideration was in reality a gift?* Secondly —*Can a husband make a gift to the wife out of the community property so as to transmute it into separate property? Both questions are resolved in the affirmative, and the first question does not appear to have been regarded by the Court as open to doubt, for no breath is wasted in discussing it.*

The case of *Smith* v. *Strahan*, 16 Texas, 820, already cited, is also similar in principle. *The deed was to the wife on a money consideration; but it was shown to be in reality a gift from the husband.* And these cases were substantially *between parties and their privies, and not strangers, the husband being the ultimate donor. Yet there was no estoppel against showing the transactions to be gifts and not sales. O'Brien v. Hilburn,* 22 Texas, 619, also appears to be directly in point. The contest was between the wife and a purchaser from the husband. The father of the wife had purchased a slave from the father of the husband, and then conveyed her to the wife by bill of sale under seal, which recites the conveyance to be *"for and in consideration of the sum of one dollar to me in hand paid, and also in consideration of love and natural affection cherished by myself toward my beloved daughter Marietta, the*

*wife of F. M. Hilburn*," etc., (p. 619,) *showing upon its face, as in the present case, the grantee to be a married woman.* The jury, under proper instructions from the Court, found the slave to be the separate property of 'the wife, and judgment was rendered accordingly. A motion for a new trial, on the grounds, among others, that the verdict was contrary to the evidence and the law, having been made and overruled, an appeal was taken, and the judgment affirmed. It is true there was a clause in the deed, " to be for the sole use and benefit of the said Marietta," etc., but this clause does not appear to have been relied on, and as we have already seen, could not affect the question. There was an express money consideration, and the husband was not a party to the deed. The principle of *Metcalf* v. *Clark*, 8 La. An. 287, and *Forbes* v. *Forbes*, 11 Ib. 326, would apply.

Thus, it appears to me to be established by the decisions in Louisiana and Texas, that parol testimony is admissible to show that the five dollars consideration in the deed from Mrs. Castro to her daughter, Mrs. Lajeunesse, (Nicanoa Coto) was not paid ; that the blood relationship was the real consideration, and that the property by the conveyance became the separate property of Mrs. Lajeunesse ; and it further seems to me, that the decisions rest on solid reasons. Nor do the decisions in our own State appear to me in any respect to conflict with this view, but on the contrary, so far as they bear upon the question, to sustain it. Such is the necessary implication, as already shown, from the reasoning in *Meyer* v. *Kinzer* and all subsequent cases repeating its points, and the effect of the express decision of *Ramsdell* v. *Fuller* by the present Court. And in *Hart* v. *Stevenson*, 21 Cal. 346, parol evidence was admitted under objection to show that a conveyance expressed to be upon a money consideration as well as " regard and esteem," was in fact a gift without any money consideration. On appeal the Court seem to have been of opinion that the evidence was properly admitted ; for no disapprobation is expressed, and a part of the reasoning, and one of the alternatives upon which the decision rested, is based upon it. The

question was a point made in the case. In Maine, where a married woman may hold property acquired by " descent, gift or purchase," a very free inquiry into the circumstances surrounding a conveyance to the wife is allowed. (*Humphrey* v. *Newmon*, 51 Me. 41 ; *Randall* v. *Lunt*, Ib. 247.)

The case of *Tustin* v. *Faught*, 23 Cal. 241, cited in the briefs, is not, it seems to me, in conflict with the views here expressed. It was simply held, *upon the face of the deed alone*, that a conveyance " upon the consideration of four hundred and sixty-one dollars, money paid, as well as love and affection," vested the title in the community, and that as common property it could be conveyed by the husband alone. Whether correct or not, it does not present the question. *Coles* v. *Soulsby*, 21 Cal. 50, also cited by appellant, so far as it is applicable at all, sustains the views maintained in this opinion. The plaintiff was a married woman. On the trial a deed was introduced " from the defendant to the plaintiff and her husband, stating that in consideration of natural love and affection, and for the sum of one dollar, he conveyed to them all his interest in the property, and surrendered all trusts and powers set forth in the second deed above mentioned. [Introduced in evidence.] The defendant then introduced, against the objection of plaintiff, evidence showing that the third deed was given and received in full settlement of all matters in difference between the parties, and proved admissions of the plaintiff to the same purport, made since its execution. Upon this evidence, the verdict and judgment passed for defendant ; and the question presented by the appeal is whether this evidence was admissible "—the third objection to the admissibility being " that it tended to contradict and vary the recitals of the deed as to its consideration." On this point, Mr. Chief Justice Field says : " It is not a valid objection to the admissibility of the evidence that it showed a consideration different from that expressed in the deed. The consideration clause of a deed is not conclusive. It *estops* the *grantor* from alleging that he executed the deed without consideration. It cannot be contradicted so as to defeat the *operation of the*

*conveyance according to the purposes therein designated,* unless it be on the ground of fraud, but with this exception, it is open to explanation and may be varied by parol proof. A limitation, it is true, is placed by some adjudicated cases upon the character of the proof admitted ; that it must be restricted to establishing a consideration of the same species with that expressed. (*Garret* v. *Stewart,* McCord, 514.) The limitation, however, does not appear to rest upon any sound principle. (See *Bennett* v. *Solomon,* 6 Cal. 135 ; *McCrea* v. *Purmort,* 16 Wend. 460 ; *Bullard* v. *Briggs,* 7 Pick. 537.)"

This sustains the views before expressed as to the common law authorities, that the estoppel is only between grantor and grantee, and even then limited to a particular purpose, the grantor being simply estopped from alleging that he executed the deed without consideration, and consequently estopped from denying that any beneficial interest passed by the deed. And he expressly holds that the distinction that the parol evidence must be limited to showing a consideration of the same species does not " rest on any solid foundation." So under this ruling a good consideration—as love and affection—may be shown when the consideration expressed is valuable—as money—*for this would not defeat the operation of the deed.* And that is all that is required by the exigencies of this case. The questions in the two cases, however, are really not precisely the same.

But to make a direct application of the rule of both the common and civil law authorities as before presented, and it will be found that the case *is not within any rule of exclusion established by either. There is no contest between the grantor and grantee named in the deed, and the case is without both the rule and the reason of the rule. It is between the grantee and a stranger to the covenants and the language of the instrument—* one who has no interest except so far as an interest arises upon a presumption of law aside from the language of the deed ; for we have seen that the husband and those claiming *under him are strangers to the deed—parties claiming against the nom-*

8

*inal grantee and the language of the instrument.* The evidence
is not offered to show that the deed does not operate at all—
that it does not pass any beneficial title—but, on the contrary,
admitting its operation to pass a title, *to show that the title
passes to the very grantee named in the deed; that its operation
is consistent with the expressed object of the conveyance.* The
presumption from a deed alone, independent of any law raising
a different presumption, is that the grantee named is the real
grantee. " The legal effect of all deeds, as a general rule, is
to vest the property in the grantee." A woman, whether
married or single, is capable of taking and holding a title in
her own right and upon a money consideration. *The legal
operation of the same language in a deed is not uniform. It may
vest a title in a* feme sole, *as separate estate in a married woman,
or an estate in common, subject to the absolute control of the hus-
band; and in such cases the real operation of the deed must be
determined by evidence* dehors *the instrument. Such evidence
cannot be inconsistent with the instrument, when it simply shows
that the nominal grantee is the real grantee.* When it appears
from the face of the deed that the nominal grantee is a married
woman, only another fact is added to the record, which
may or may not be true, but the remaining facts necessary to
show the real operation of the deed are no more inconsistent
with the intent manifested by the language of the deed than
if this fact also rested in parol. In the language of Mr. Chief
Justice Field, before cited, the common law rule is : " It (the
consideration clause) cannot be contradicted so as to defeat
the operation of the conveyance, *according to the purposes
therein designated,*" and "*the purposes therein designated*" in
the deed in question are "*to secure fully to my said children
the aforesaid interest in the above mentioned grants,*" and 'to
"grant" etc., to the eight children of Mrs. Castro, "*and to
each of them, and to their heirs and assigns the one undivided
ninth part each of the entire rancho,*" etc.—*not to convey to such
as were married an estate in common with their husbands.* The
law, from the mere fact of the making of the conveyance
during coverture, outside of the purpose expressed in the deed,

attaches the latter consequence, if it attached at all. *And the parol evidence goes to sustain the operation of the deed in accordance with " the purpose therein expressed."* The law attaches no *different signification* to the language because it appears in a deed to a married woman, but for certain convenient purposes it *raises a presumption* against her from the circumstances under which it is executed contrary to the intent expressed by the language of the deed; and the parol evidence is introduced to rebut that presumption, and give the deed its proper operation in accordance with its expressed purpose. The operation of the deed is defeated or controlled in no respect or sense other than in the many cases cited in which parol testimony was admitted to show the source whence the money consideration came, and the principle of both classes of cases is the same.

Again, the authorities agree that the exclusion of parol testimony under the common law rule invoked is based upon the principle of estoppel. But under our Constitution and laws, to a great extent unlike the Mexican law formerly in force, or even that of Louisiana, or of Texas in some respects, a married woman is not endowed with an unlimited power to bind herself by contract, or even to contract with respect to her separate property. She can only bind herself by pursuing a prescribed mode. For this reason, also, the rule invoked, if it embraced the case, would not apply. A married woman, under our Constitution and laws, cannot deprive herself of, or pass to another the title to property which would otherwise be her separate estate by matter of estoppel, arising out of acts not performed in the prescribed mode and unaccompanied by any act constituting fraud either in law or in fact. Conveyances to children, in consideration of love and affection—gifts or advancements—are voluntary on the part of the donor. When such a conveyance has been voluntarily executed by a father or mother, and gratuitously tendered to a daughter, unacquainted with legal forms, who happens to be married, must she stop and critically scrutinize the instrument, and, if it happens to express a consideration of one dollar or one pepper-

corn in addition to love and affection, must she reject it, and run the risk of not having a better tendered, on pain of losing the estate by estoppel if she accepts the boon in the proffered form? Such is neither the spirit nor the letter of our Constitution and laws. There is no sound reason for a rule estopping a married woman, in such a case, from averring and proving the truth. Her act in taking a deed expressing a money consideration can mislead no one to his injury, and this is the ground upon which the doctrine of estoppel in such instances rests. To take a deed of common property in the name of the wife is, as before remarked, entirely out of the ordinary course of business. If the title stands in the name of the husband, whether common or the separate property of the husband, or even if there is a resulting trust in favor of the separate estate of the wife, and a purchase is made in good faith for a valuable consideration, without notice of the trust, the deed of the husband will pass the title to a party who thus rests upon the record. But when the record title is nominally in the wife, this unusual circumstance is enough to put a party upon inquiry, as is shown by a number of cases already cited, and by the case of *Ramsdell* v. *Fuller*, decided by this Court upon the authority of those cases. If one takes a deed from the husband alone to lands, the title to which stands in the name of the wife, he knows that he is obtaining a conveyance of property that may be, and in all probability is, the separate property of the wife. He is, at least, not getting a conveyance from the party in whose name the title stands, and he cannot complain if he fails, with this knowledge, to inform himself as to where the title really is, or to procure the signanature of the wife to the conveyance. In such case no loss can accrue except through one's own laches, and the law does not favor the negligent. The law, like the gods, takes care of those only who endeavor to take care of themselves. I, therefore, apprehend none of the evil consequences sometimes suggested as likely to arise from the enforcement of the principles here maintained. The truth is, husband and wife, as to the rights of property, under our constitutional and stat-

utory modifications of the common law, occupy an anomalous position. They are separate legal entities, so far as a capacity to take, hold and enjoy property in their own separate right is concerned, yet so ·connected and legally blended that the same acts relating to rights of property, where husband and wife are parties, give rise to legal presumptions entirely different from those arising between other persons—presumptions even contrary to the express language of the deeds vesting title in them; and, in consequence of this anomalous condition, in order to protect their constitutional rights in respect to their property interests, an absolute necessity arises for a free·inquiry into the actual state of facts relating to those interests. Such inquiry has consequently been made with great freedom where similar laws relating to marital rights prevail. And the application of common law rules of evidence must be made with some reference to the modifications of common law rights and assurances.

The principle contended for by the appellant must, I think, have been contrary to the sense of the great body of the profession prior to the case of *Meyer* v. *Kinzer*, for I do not now recollect of ever having seen a conveyance executed prior to that time, which did not express a valuable consideration, either nominal or real, in addition to that of love and affection. But whether it was the sense of the profession or not, the principles of evidence applicable to the question here maintained appear to me to be founded in good sense, and abundantly supported by authority. And in view of other principles suggested in the discussion that must be enforced, to hold the contrary would, in my judgment, be to effectually abrogate to a very great extent the provisions of the Constitution in respect to the separate property of the wife.

It appears highly probable that the admission of the parol evidence in this case will work a great hardship, resulting, not from the fact that the first grantee of Mrs. Lajeunesse relied upon the deed from the husband, but from the fact of a defective acknowledgment of the wife resulting from the mistake of the officer taking it. The party evidently was in no respect

misled by the condition of the title, for he obtained the signature and attempted to obtain the acknowledgment of the wife; and I apprehend that it will be difficult to find a case where injury has resulted from such misapprehension. Generally, as in this case, the difficulty will be found to have arisen from other causes, and the exclusion of the parol testimony invoked as a forlorn hope. But extremely hard cases, from whatever causes arising, will not justify a departure from correct principles, and especially so, when, as in this case, the rule adopted is one which must be wide spread in its operation, affecting conveyances of vast amounts of the real property of the State.

The great importance of the question involved in this case is my apology for the extended discussion indulged in this opinion.

I am of the opinion that the parol evidence was properly admitted.

### *When deed to married woman a deed of gift.*

But, on the hypothesis that a deed expressing a consideration of love and affection raises a presumption, conclusive or otherwise, in favor of the wife, I am of the further opinion that, independent of the parol evidence, the conveyance in question is, upon its face, manifestly a gift or advancement from the mother to the daughter, and that the effect of the deed alone is to convey a separate estate. The grantees are the eight children of the grantor, and it is so expressed in the deed. The subject matter conveyed consisted of two large tracts of land granted to the mother—" to herself and family," as expressed in the deed—by the Mexican Government, one of said tracts being two miles in length by a half league in breadth, the dimensions of the other not being stated. The further recitals have been already set out, showing that, in view of the grant to herself and family, and a supposed interest already existing in the children, she was moved by these considerations and her affection for her children to make the conveyance, and not by the paltry sum of five dollars, inserted, doubtless, by the conveyancer without suggestion from her or

knowledge of the effect it might have, on the idea that it would make assurance doubly sure. Such, it seems to me, is the reasonable import of the entire language of the deed, when construed with reference to the modifications of the common law made by our Constitution and statutes enacted under it. At all events, this is a part of the expressed consideration, and I think it would be doing violence to the whole tenor and scope of the instrument to hold that the terms of the conveyance are such as to raise a legal presumption under the statute that the estate conveyed became common property. The case is a much stronger one for holding upon the face of the deed the land to be the separate property of the wife than is disclosed by the case of *Tustin* v. *Faught*, as reported, before referred to. The case of *O'Brien* v. *Hilburn*, 22 Texas, 619, before cited, seems to be in accordance with the views here taken.

So also a similar deed in " consideration of love and affection the grantor had towards the grantee (a son), and for the consideration of five dollars received to his full satisfaction," was held by the Supreme Court of Connecticut to be upon its face a deed of gift by way of advancement. The Court say : " A deed in consideration of love and affection is most justly presumed to be an advancement. The presumption, however, in this, as in other cases, may be rebutted by proof. In the case before us, if the deed to Henry A. Straight is merely a deed of gift, the estate transferred by it, within the fair construction of the statute, must be considered as advanced portion. This brings me to the principal question in the case, which is, whether anything appears to rebut the presumption of advancement. The deed to Henry A. Straight is expressed to be ' in consideration of love and affection, and of five dollars.' It would be ascribing too much importance to this nominal consideration to consider it as repelling the proof of advanced portion. The principle of equity, on this construction, would be almost as much violated as if the consideration had been purely voluntary. Had the sum received by the grantor been a cent merely, it would be serious trifling

to contend that the nature and effect of the provision was changed by it. Between this sum and five dollars, the four hundredth part in value of the property conveyed, there is no material difference." (*Hatch* v. *Straight;* 3 Conn. 34.)

That a conveyance in consideration of love and affection is a "gift" within the meaning of the term as used in our Constitution and statute, although not a technical gift at common law, I entertain no doubt.

I think, therefore, that the construction of the conveyance in question in this case should not be controlled on this point by *Tustin* v. *Faught.*

Thirdly—Under the view taken there was no error in admitting the testimony relating to the value of the land conveyed by Mrs. Castro to her children.

Fourthly—The question as to the admissibility of the deed of Lajeunesse and wife to Hihn, was also determined in *Hihn* v. *Peck, post.* It was well executed on its face and properly admitted. The other questions argued, founded upon this deed and the testimony introduced for the purpose of avoiding it and defeating its operation, go to the correctness of the findings of fact, and do not arise on this record.

No error appearing, the judgment must be affirmed, and it is so ordered.

Mr. Justice SANDERSON delivered the following opinion, concurring specially, in which Mr. Chief Justice CURREY, Mr. Justice SHAFTER, and Mr. Justice RHODES concurred:

As to the admissibility of parol evidence to explain the effect of the deed from Martina Castro to her children, we deem it unnecessary to express an opinion, for the reason that it is, in our judgment, a deed of gift upon its face, and, therefore, stands in no need of explanation. On this and the remaining grounds discussed in the opinion, we concur in the judgment.